# ILLINOIS OFFICIAL REPORTS

## Supreme Court

---

### *In re S.B.*, 2012 IL 112204

---

| | |
|---|---|
| Caption in Supreme Court: | *In re* S.B., a Minor (The People of the State of Illinois, Appellant, v. S.B., Appellee). |
| Docket No. | 112204 |
| Filed | October 4, 2012 |
| Held<br><br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | A juvenile who has been found "not not guilty" of aggravated criminal sexual abuse following a statutory discharge or "innocence only" hearing must register as a sex offender, but may petition to be removed from the registry as provided by law. |
| Decision Under Review | Appeal from the Appellate Court for the Third District; heard in that court on appeal from the Circuit Court of Peoria County, the Hon. Chris L. Fredericksen, Judge, presiding. |
| Judgment | Reversed and remanded. |

| Counsel on Appeal | Lisa Madigan, Attorney General, of Springfield, and Kevin W. Lyons, State's Attorney, of Peoria (Michael A. Scodro, Solicitor General, and Michael M. Glick and Leah M. Bendik, Assistant Attorneys General, of Chicago, and Patrick Delfino, Terry A. Mertel and Gary F. Gnidovec, of the Office of the State's Attorneys Appellate Prosecutor, of Ottawa, of counsel), for the People. |
|---|---|
| | Carrie B. Stevens, of Grand Junction, Colorado, for appellee. |
| Justices | JUSTICE BURKE delivered the judgment of the court, with opinion. |
| | Chief Justice Kilbride and Justices Freeman, Thomas, Karmeier, and Theis concurred in the judgment and opinion. |
| | Justice Garman dissented, with opinion. |

**OPINION**

¶ 1      At issue in this case is whether a juvenile who has been found "not not guilty" of aggravated criminal sexual abuse following a discharge hearing pursuant to section 104-25(a) of the Code of Criminal Procedure of 1963 (725 ILCS 5/104-25(a) (West 2008)) must register as a sex offender. The appellate court concluded that registration was not required. 408 Ill. App. 3d 516. We hold that the juvenile is required to register as a sex offender, but that he may petition to be removed from the sex offender registry under the terms set forth in section 3-5 of the Sex Offender Registration Act (730 ILCS 150/3-5 (West 2008)).

¶ 2                            Background

¶ 3      On July 7, 2006, the State filed a two-count juvenile petition in the circuit court of Peoria County alleging that S.B., a minor, was delinquent. Count I alleged that in June or July of 2005, S.B. placed his finger in the vagina of a girl under the age of nine, thereby committing aggravated criminal sexual assault (720 ILCS 5/12-14(b)(i) (West 2004)). Count II alleged that S.B. touched the vagina of the victim for the purpose of sexual arousal, thereby committing aggravated criminal sexual abuse (720 ILCS 5/12-16(c)(2)(i) (West 2004)).

¶ 4      The circuit court ordered that S.B. be evaluated for his fitness to stand trial. Dr. Jane Velez examined S.B. under the fitness procedures of the Code of Criminal Procedure (Code) (725 ILCS 5/104-10 *et seq.* (West 2008)) and was the sole witness to testify at his fitness hearing. Velez stated that S.B., who was 14 years old at the time of the incident, suffered from mild mental retardation and that he functioned like "a 7 or 8-year-old boy." Velez concluded that, because of his intellectual limitations, S.B. would not be able to assist in his defense, and was therefore unfit to stand trial. Velez also explained to the court that S.B. was

"really not a pedophile" and that "his main difficulty" was his cognitive limitations. According to Velez, with family support and counseling, there was little risk of recidivism on the part of S.B.

¶ 5    At the conclusion of the fitness hearing, the circuit court found that S.B. was unfit to stand trial and there was no substantial likelihood he would attain fitness within one year. See 725 ILCS 5/104-16(d) (West 2008)). As a result, the court set the matter for a discharge hearing pursuant to section 104-25(a) of the Code (725 ILCS 5/104-25(a) (West 2008)). A discharge hearing "is an 'innocence only' proceeding that results in a final adjudication of charges only if the evidence fails to establish the defendant's guilt beyond a reasonable doubt (resulting in the defendant's acquittal) or the defendant is found not guilty by reason of insanity. If the evidence is found to be sufficient to establish the defendant's guilt, no conviction results. Instead, the defendant is found *not* not guilty (*People v. Lavold*, 262 Ill. App. 3d 984 (1994)) and may be held for treatment. A criminal prosecution of the charges against the defendant does not take place unless or until the defendant is found fit to stand trial." (Emphasis in original.) *People v. Waid*, 221 Ill. 2d 464, 469-70 (2006).

¶ 6    At the discharge hearing, the victim, M.J., testified for the State. M.J., who was seven years old on the date of the hearing and four years old at the time of the incident, stated that S.B. was her neighbor. On the day of the incident, M.J. was playing in a cornfield with S.B. and his brother when they found a ball. According to M.J., S.B. came up with a game where one person threw the ball, the other two persons looked for it, and the person who did not find it had to "get naked." S.B. threw the ball, his brother found it, and as a result, M.J. took off her clothes. While M.J. was standing naked, S.B. approached her, got on his knees, and touched her "private part." At some point, S.B.'s brother threw the ball a second time, and S.B. failed to find it. S.B. undressed and asked M.J. to touch his penis. M.J. then touched S.B.'s penis with her finger. After getting dressed, S.B., his brother, and M.J. left the cornfield.

¶ 7    M.J. did not tell anyone about what happened in the cornfield because she was afraid she would get in trouble. Approximately a year later, however, M.J.'s grandmother learned about the incident from M.J.'s brother and contacted the police.

¶ 8    Detective David Doubet from the Peoria County sheriff's department testified about statements M.J. made to him during his investigation of the incident. See 725 ILCS 5/115-10 (West 2008) (allowing admission of out-of-court statement by minor victim of sex offense as exception to hearsay rule). Doubet essentially reiterated M.J.'s testimony.

¶ 9    At the close of evidence, the State conceded there was insufficient evidence to establish that S.B. had penetrated the victim's vagina. The circuit court agreed and, accordingly, entered a judgment of acquittal on count I. With respect to count II, the circuit court found that M.J.'s testimony was credible and that her touching of S.B.'s penis at his request was sufficient to establish the element of sexual arousal. The court therefore found that the State had proven beyond a reasonable doubt that S.B. committed aggravated criminal sexual abuse. Accordingly, the court entered a finding of no acquittal or "not not guilty" on count II.

¶ 10   For the next 15 months, S.B. was evaluated on an outpatient basis by the Illinois Department of Human Services pursuant to section 104-25(d)(1) of the Code (725 ILCS

-3-

5/104-25(d)(1) (West 2008)). Reports generated during this period describe the efforts made to restore S.B. to fitness by educating him about the legal process. The reports also uniformly state that S.B. was not suffering from a mental illness and was not considered a danger to himself or others.

¶ 11    At the conclusion of the 15-month period, the circuit court found that S.B. remained unfit to stand trial. The State then moved to compel further fitness treatment for S.B. pursuant to section 104-25(g)(2) of the Code (725 ILCS 5/104-25(g)(2) (West 2008)). Under this provision, a court may order further treatment of a person if he is either subject to involuntary admission under the Mental Health and Developmental Disabilities Code (405 ILCS 5/1-100 *et seq.* (West 2008)) or "constitutes a serious threat to public safety." The court denied the State's motion, finding there was no evidence that S.B. was mentally ill or that he posed a threat to public safety.

¶ 12    The State also moved to compel S.B.'s registration as a sex offender pursuant to section 2(A)(1)(d) of the Sex Offender Registration Act (SORA) (730 ILCS 150/2(A)(1)(d) (West 2008)). This provision defines a sex offender as "any person" who is charged with a sex offense who "is the subject of a finding not resulting in an acquittal" following a discharge hearing. On January 27, 2009, the circuit court granted the State's motion and ordered S.B. to register as a sex offender. Defendant appealed.

¶ 13    On appeal, defendant did not contest his conviction but, instead, challenged only the circuit court's order requiring him to register as a sex offender. With one justice dissenting, the appellate court concluded that registration was not required and reversed the judgment of the circuit court. 408 Ill. App. 3d 516.

¶ 14    In so holding, the appellate court noted that the only reference to juveniles in SORA's definitions of a sex offender is found in section 2(A)(5) (730 ILCS 150/2(A)(5) (West 2008)), and that this provision refers only to juveniles who have been adjudicated delinquent. Because S.B. was not adjudicated delinquent but, instead, was found "not not guilty" following a discharge hearing, the court concluded that S.B. was not a sex offender as defined in SORA.

¶ 15    The appellate court further noted that section 3-5 of SORA (730 ILCS 150/3-5 (West 2008)) allows juveniles who have been adjudicated delinquent to petition for termination of registration under certain conditions, but does not mention juveniles found "not not guilty." Given this fact, the court concluded that it would be "absurd and unjust" to apply section 2(A)(1)(d) to juveniles found "not not guilty," as the result would be "a nondelinquent juvenile having fewer rights than a juvenile who was actually adjudicated delinquent." 408 Ill. App. 3d at 520.

¶ 16    We allowed the State's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Feb. 26, 2010).


¶ 17                                    Analysis

¶ 18    Section 2 of SORA sets forth the definitions of a sex offender and provides, in relevant part:

        "(A) As used in this Article, 'sex offender' means any person who is:

-4-

(1) charged pursuant to Illinois law, or any substantially similar federal, Uniform Code of Military Justice, sister state, or foreign country law, with a sex offense set forth in subsection (B) of this Section or the attempt to commit an included sex offense, and:

\* \* \*

(d) is the subject of a finding not resulting in an acquittal at a hearing conducted pursuant to Section 104-25(a) of the Code of Criminal Procedure of 1963 for the alleged commission or attempted commission of such offense; or

\* \* \*

(5) adjudicated a juvenile delinquent as the result of committing or attempting to commit an act which, if committed by an adult, would constitute any of the offenses specified in item (B), (C), or (C-5) of this Section \*\*\* ." 730 ILCS 150/2(A)(1)(d), (A)(5) (West 2008).

¶ 19 As it did in the courts below, the State maintains that S.B. falls within the plain meaning of section 2(A)(1)(d) because he was a person charged with a sex offense under Illinois law and was found "not not guilty" following a discharge hearing. Thus, according to the State, S.B. is a sex offender under SORA and is required to register.

¶ 20 S.B., in response, initially contends that section 2(A)(1)(d) is inapplicable in this case because "no specific statute" allows for discharge hearings under the Juvenile Court Act of 1987 (705 ILCS 405/1-1 *et seq.* (West 2008)). According to S.B., because the discharge hearing that took place in this case was not authorized by statute, the circuit court's finding that S.B. was "not not guilty" is void and cannot provide a basis for applying section 2(A)(1)(d).

¶ 21 Whether discharge hearings under section 104-25(a) are applicable in juvenile proceedings is a matter of first impression in this court. The Juvenile Court Act does not contain its own provisions addressing a minor's fitness or procedures to follow in the event a minor is found unfit to stand trial. However, section 5-101(3) of the Juvenile Court Act states that, "[i]n all procedures under this Article, minors shall have all the procedural rights of adults in criminal proceedings, unless specifically precluded by laws that enhance the protection of such minors." 705 ILCS 405/5-101(3) (West 2008). The fitness procedures found in the Code of Criminal Procedure, including discharge hearings pursuant to section 104-25(a), exist to safeguard the due process rights of defendants. Accordingly, we hold that section 104-25(a) is incorporated into the Juvenile Court Act and that the circuit court's finding of "not not guilty" in this case was not void. See *In re T.D.W.*, 109 Ill. App. 3d 852, 854-55 (1982), *overruled on other grounds by People v. Gentry*, 351 Ill. App. 3d 872 (2004) (holding that the fitness procedures from the Code of Criminal Procedure apply in juvenile proceedings).

¶ 22 S.B. further maintains, however, that even if the discharge hearing provision applies, the appellate court was nevertheless correct in holding that S.B. is not a sex offender within the meaning of SORA. According to S.B., because section 2(A)(5) references juveniles who have been adjudicated delinquent, the General Assembly intended to exclude other juveniles

from section 2(A)(1)(d). In other words, S.B. contends that the only way for a juvenile to fall under SORA's definitions of a sex offender is if the minor is adjudicated delinquent. This argument cannot be reconciled with the plain language of section 2(A)(1)(d).

¶ 23 To meet the definition of a sex offender under section 2(A)(1)(d), a person must be charged pursuant to Illinois law with a sex offense set forth in subsection (B) of section 2 (which includes aggravated criminal sexual abuse) and must be subject to a finding not resulting in an acquittal following a discharge hearing under section 104-25(a) of the Code. S.B. meets these conditions and, therefore, is a sex offender as defined by SORA.

¶ 24 The appellate court also found, however, that defining juveniles found "not not guilty" as sex offenders would lead to "absurd and unjust results" in light of section 3-5 of SORA (730 ILCS 150/3-5 (West 2008)). That provision states, in relevant part:

"(c) For a minor adjudicated delinquent for an offense which, if charged as an adult, would be a felony, no less than 5 years after registration ordered pursuant to subsection (a) of this Section, the minor may petition for the termination of the term of registration. For a minor adjudicated delinquent for an offense which, if charged as an adult, would be a misdemeanor, no less than 2 years after registration ordered pursuant to subsection (a) of this Section, the minor may petition for termination of the term of registration.

(d) The court may upon a hearing on the petition for termination of registration, terminate registration if the court finds that the registrant poses no risk to the community by a preponderance of the evidence based upon the factors set forth in subsection (e)." 730 ILCS 150/3-5(c), (d) (West 2008).

¶ 25 According to the appellate court, including juveniles found "not not guilty" as sex offenders under section 2(A)(1)(d) would be absurd because the provisions of section 3-5 allowing termination of registration apply only to juveniles adjudicated delinquent. Thus, a nondelinquent juvenile would end up "having fewer rights than a juvenile who was actually adjudicated delinquent in that the former has no ability to petition the circuit court to have his sex offender registration terminated pursuant to section 3-5(c)." 408 Ill. App. 3d at 520.

¶ 26 We agree. Indeed, the absurdity noted by the appellate court is particularly evident in this case, where S.B. has been found, after extensive evaluation, not to pose a threat to the safety of the public. We can think of no reason why a juvenile whom the circuit court has determined poses no danger to the community may not petition for removal from the sex offender registry, while a juvenile who has been adjudicated delinquent may. We hold, therefore, that despite the fact that section 3-5 mentions only juveniles adjudicated delinquent, the legislature cannot have intended to exclude juveniles found "not not guilty" from its reach. See, *e.g.*, *People v. Hanna*, 207 Ill. 2d 486 (2003) (the literal reading of a statute must yield where such a reading leads to an absurd result).

¶ 27 However, as the State correctly points out, the appellate court erred in relying on the absurd-result principle to hold that juveniles found "not not guilty" do not fall under section 2(A)(1)(d) and, therefore, are not required to register as sex offenders. The illogic in the statutory scheme is not in requiring registration for juveniles found "not not guilty," as such juveniles have been found to have committed a sexual offense beyond a reasonable doubt.

Rather, the illogic is in denying those juveniles the opportunity to petition for termination of registration, just as juveniles who have been adjudicated delinquent may do. Recognizing this fact, the State suggests that this "Court should correct [the absurdity] by interpreting section 3-5 to allow all juveniles required to register under SORA to petition for early termination of registration obligations rather than limit the universe of juveniles required to register under section 2(A) in the first instance." We agree with the State.

¶ 28    "We have authority to read into statutes language omitted by oversight." *Carey v. Elrod*, 49 Ill. 2d 464, 470 (1971) (citing *People v. Hudson*, 46 Ill. 2d 177, 181 (1970), and *People ex rel. Cason v. Ring*, 41 Ill. 2d 305, 310-16 (1968)). "[W]hile courts are and should be cautious about adding words, as such, to a statute generally, they will not hesitate to read into the sense of some section or provision a qualifying or expanding expression plainly implied by the general context of the act, which has been palpably omitted and which is necessary to prevent the legislative purpose from failing in one of its material aspects." *People ex rel. Barrett v. Anderson*, 398 Ill. 480, 485 (1947). Further, words may be supplied in a statute where omission of the words makes the statute absurd. See generally 2A Norman J. Singer & J.D. Shambie Singer, Sutherland on Statutory Construction § 47:38, at 522-24 (7th ed. 2007).

¶ 29    In enacting the termination provisions of section 3-5, the General Assembly recognized that, in many instances, juveniles who engage in sexually inappropriate behavior do so because of immaturity rather than predatory inclinations. The purpose of the termination provisions of section 3-5 is to afford juveniles the opportunity to demonstrate this is true in an individual case, and to prove that they do not pose a safety risk to the community. To read section 3-5 as denying juveniles found "not not guilty" the opportunity to proceed under the termination provisions would—in addition to creating the absurdity noted by the appellate court—defeat the very purpose of the statute.

¶ 30    Moreover, it is evident why, in enacting section 3-5, the General Assembly overlooked juveniles found "not not guilty" following a discharge hearing. Discharge hearings are not explicitly mentioned in the Juvenile Court Act. As noted above, this is the first decision from this court to expressly hold that discharge hearings under section 104-25 of the Code are incorporated into the Juvenile Court Act. See 408 Ill. App. 3d at 525 (Schmidt, J., dissenting) ("My best guess is that the failure to include [juveniles found 'not not guilty'] in the group who can petition for early termination of the registration requirement is simply a legislative oversight.").

¶ 31    In order to avoid an absurd result, and to give effect to the purpose of section 3-5 of SORA, we hold that section 3-5 should be read to include juveniles for whom a finding of "not not guilty" has been entered following a discharge hearing. S.B. may therefore petition for removal from the sex offender registry pursuant to the terms of section 3-5.

¶ 32    At oral argument, the State pointed out that the same inconsistency noted by the appellate court with respect to section 3-5 of SORA also appears in section 121 of the Sex Offender Community Notification Act (730 ILCS 152/121 (West 2008)). That provision limits the dissemination of sex offender information "with respect to an adjudicated delinquent." For the reasons expressed above, we similarly hold that section 121 of the Sex Offender

Community Notification Act should be read to include juveniles found "not not guilty" following a discharge hearing under section 104-25 of the Code.

¶ 33    Finally, we note that S.B. argues that denying him the opportunity to petition for termination of registration violates his right to equal protection and due process. Because we have concluded, as a matter of statutory interpretation, that S.B. may petition to be removed from the sex offender registry under the terms set forth in section 3-5, we need not address these contentions.

¶ 34                                        Conclusion

¶ 35    For the foregoing reasons, the judgment of the appellate court is reversed. The cause is remanded to the circuit court for further proceedings consistent with this opinion.

¶ 36    Reversed and remanded.

¶ 37    JUSTICE GARMAN, dissenting:

¶ 38    I agree with my colleagues that the trial court properly conducted a discharge hearing in the present case. However, I do not join that portion of the opinion that imposes upon a juvenile the same consequences that a finding of "not not guilty" would impose on an adult offender.

¶ 39    The term "discharge hearing" does not appear anywhere in the Juvenile Court Act. However, the Act does contain a speedy-trial provision, which states, in part:

> "The period in which a trial shall be held *** is tolled by: (i) delay occasioned by the minor; (ii) a continuance allowed pursuant to Section 114-4 of the Code of Criminal Procedure of 1963 after the court's determination of the minor's incapacity for trial; (iii) an interlocutory appeal; (iv) an examination of fitness ordered pursuant to Section 104-13 of the Code of Criminal Procedure of 1963; (v) a fitness hearing; or (vi) an adjudication of unfitness for trial." 705 ILCS 405/5-601(8) (West 2008).

¶ 40    Clearly, the Juvenile Court Act anticipates fitness hearings for juveniles and the possibility that a juvenile will be found unfit to proceed with a trial or adjudication. The Act also directs the trial court to conduct the fitness evaluation pursuant to section 104-13 of the Code of Criminal Procedure. The Juvenile Court Act, however, does not provide direction to the courts as to how to proceed when a minor is found unfit to proceed.

¶ 41    Article 104 of the Code of Criminal Procedure is titled "Fitness for trial, to plead or to be sentenced." It contains over 20 separate provisions, only one of which, section 104-13, is expressly incorporated by reference into the Juvenile Court Act. The legislature's choice to expressly incorporate only this one provision may reflect its intention that the other sections of Article 104 not apply in juvenile proceedings; or, the failure to specifically provide a procedure to be followed if a juvenile is found unfit to proceed may be an oversight.

¶ 42    When faced with a finding of unfitness and the absence of guidance in the statute, the trial court is faced with two alternatives. First, the finding of unfitness could require

dismissal of the juvenile proceeding. This option serves neither the unfit minor nor the public.

¶ 43    Second, the court could proceed as it did in the present case, by "importing" section 104-25(a) of the Code of Criminal Procedure and conducting a discharge hearing. Section 104-25(a) provides, *in toto*:

> "(a) As provided for in paragraph (a) of Section 104-23 and subparagraph (1) of paragraph (b) of Section 104-23 a hearing to determine the sufficiency of the evidence shall be held. Such hearing shall be conducted by the court without a jury. The State and the defendant may introduce evidence relevant to the question of defendant's guilt of the crime charged.
>
> The court may admit hearsay or affidavit evidence on secondary matters such as testimony to establish the chain of possession of physical evidence, laboratory reports, authentication of transcripts taken by official reporters, court and business records, and public documents." 725 ILCS 5/104-25(a) (West 2008).

¶ 44    The majority holds that "section 104-25(a) is incorporated into the Juvenile Court Act and that the circuit court's finding of 'not not guilty' was not void." *Supra* ¶ 20.

¶ 45    A finding of "not not guilty" is authorized by section 104-25(d), not section 104-25(a). In addition, a finding that the evidence does not prove the defendant guilty beyond a reasonable doubt results in a judgment of acquittal under section 105-25(b); a finding that the defendant is not guilty by reason of insanity and the resulting acquittal is governed by section 105-25(c). 725 ILCS 5/104-25(b), (c), (d) (West 2008). As a result, this court cannot "incorporate" only section 104-25(a) of the Code of Criminal Procedure into the Juvenile Court Act without incorporating, at least, sections 104-25(b), (c), and (d). And if subsections (a) through (d) are incorporated, what about (e) through (g)?

¶ 46    And if the mere mention in the Juvenile Court Act of a fitness examination under section 104-13 of the Code of Criminal Procedure "incorporates" additional sections of Article 104 of the Code, what of the other sections in that Article?

| 104-10 | Presumption of Fitness; Fitness Standard |
| 104-11 | Raising Issue; Burden; Fitness Motions |
| 104-12 | Right to Jury |
| 104-14 | Use of Statements Made During Examination or Treatment |
| 104-15 | Report |
| 104-16 | Fitness Hearing |
| 104-17 | Commitment for Treatment; Treatment Plan |
| 104-18 | Progress Reports |
| 104-19 | Records |
| 104-20 | Ninety-Day Hearings; Continuing Treatment |
| 104-21 | Medication |
| 104-22 | Trial with Special Provisions and Assistance |

104-23 Unfit Defendants

104-26 Disposition of Defendants Suffering Disabilities

¶ 47    These questions aside, I agree that holding a discharge hearing after a minor has been found unfit to proceed with adjudication is in keeping with section 5-101(3) of the Juvenile Court Act, which states that minors shall have all of the procedural rights of adults in criminal proceedings "unless specifically precluded by laws that enhance the protection of such minors." 705 ILCS 405/5-101(3). Nothing in the Juvenile Court Act specifically precludes the trial court from holding a discharge hearing, and because the hearing may result in dismissal if the evidence is not sufficient to support an adjudication of delinquency, a discharge hearing enhances the protection of minors by providing due process.

¶ 48    I, therefore, agree with the majority that a trial court may conduct a discharge hearing, along the lines of the hearings governed by section 104-25 of the Code of Criminal Procedure, when a juvenile has been found unfit to proceed with adjudication. I stop short of finding that the legislature intended to "incorporate" any part of Article 104 of the Code, aside from section 104-13, into the Juvenile Court Act. I also question the holding that incorporates only section 104-25(a) of the Code, but not sections 104-25(b), (c), and (d), and does not offer a guide to the lower courts for determining which other sections of Article 104 of the Code are also deemed incorporated.

¶ 49    In the present case, the trial court concluded after a discharge hearing that there was sufficient evidence to adjudicate the minor delinquent, had he been fit to proceed, in effect, finding him "not not guilty."

¶ 50    If an adult is found "not not guilty," several consequences flow. The adult may be held for treatment for up to two years, or for up to five years on a charge of first degree murder. 725 ILCS 5/104-25(d) (West 2008). The majority does not suggest that these consequences attach to a juvenile, but does not explain why.

¶ 51    In addition, the adult found "not not guilty" of specified crimes is required to register as a sex offender pursuant to section 2(A)(1)(d) of the Sex Offender Registration Act (SORA). 730 ILCS 150/2(A)(1)(d) (West 2008). The majority concludes that because section 104-25(a) of the Code of Criminal Procedure is incorporated into the Juvenile Court Act, the juvenile who is found "not not guilty" of one of the enumerated sex offenses after a discharge hearing is also required to register as a sex offender.

¶ 52    Section 2(A) of SORA lists five separate categories of sex offenders. A sex offender is "any person" who falls into one of the five enumerated categories.

¶ 53    Only category (5) expressly applies to juveniles. Under this provision, a minor is required to register as a sex offender if "adjudicated a juvenile delinquent as the result of committing or attempting to commit an act which, if committed by an adult, would constitute any of the offenses specified." 730 ILCS 150/2(A)(5) (West 2008).

¶ 54    As I read section 2 of SORA, there is only one circumstance under which a minor could come within any of the other categories of sex offender. Under the plain language of section 2(A)(1), "any person" who "is convicted of" one of the enumerated crimes or of "an attempt to commit such offense" is a sex offender and required to register. 730 ILCS 150/2(A)(1) (West 2008). The only way that a minor could come within this section is if he is at least 15

years old, charged with aggravated criminal sexual assault, and prosecuted as an adult under section 5-130(1)(a) of the Juvenile Court Act (705 ILCS 405/5-130(1)(a) (West 2008)). The plain meaning of section 2 of SORA is that a minor must register only if adjudicated delinquent as a result of committing one of the listed crimes or if tried as an adult and convicted of such a crime.

¶ 55    Nevertheless, the majority finds an inconsistency in SORA because, as a result of its incorporating section 104-25(a) of the Code of Criminal Procedure into the Juvenile Court Act, a minor may be determined to be "not not guilty" of one of the enumerated crimes. If such a finding were made with respect to an adult, or to a minor over the age of 15 who was prosecuted as an adult, he would be defined as a sex offender under section 2(A)(1)(d). Thus, the majority concludes, a 14-year-old who was not fit for adjudication because of his developmental disability and who was not charged with a crime that would have allowed him to be prosecuted as an adult even if he were 15 must register as a sex offender.

¶ 56    This apparent inconsistency was created by the majority's incorporation of section 104-25(a) of the Code of Criminal Procedure into the Juvenile Court Act. As a result, this court—not the language of SORA—would make sections 2(A)(1)(c), (d), and (e) of SORA applicable to unfit juveniles who have been given a discharge hearing.

¶ 57    I find no inconsistency in SORA. The meaning of section 2 is plain. A minor is not required to register unless he is adjudicated delinquent or unless he comes within the definition of "sex offender" by virtue of having been prosecuted as an adult.

¶ 58    The majority's approach, aside from ignoring the plain language of section 2(A) of SORA, renders paragraph (5) mere surplusage. If a minor is a "sex offender" by virtue of "conviction" of one of the enumerated offenses and if, as section 2(A) states, " 'convicted' shall have the same meaning as 'adjudicated,' " (730 ILCS 150/2(A) (West 2008)), then there is no reason whatsoever to have paragraph (5) at all. Every minor accused of one of the enumerated crimes will either be acquitted, adjudicated delinquent (*i.e.*, convicted), found "not not guilty" after a discharge hearing, or found not guilty by reason of insanity. All of these outcomes are expressly provided for in section 2(A)(1), making section 2(A)(5), under the majority's reading, utterly unnecessary.

¶ 59    The legislature's intent that minors be required to register as sex offenders only if convicted as adults or if adjudicated delinquent is also reflected in section 3 of SORA, which is titled "Application of Act to adjudicated juvenile delinquents." 730 ILCS 150/3-5 (West 2008). This section governs the duration of sex offender registration by a juvenile and permits "a hearing on the petition for termination of registration." 730 ILCS 150/3-5(d) (West 2008).

¶ 60    Thus, a minor who is tried as an adult, convicted, and ordered to register as a sex offender does not come within the scope of this section and would not be eligible to petition for termination of registration. A minor, as in the present case, who is defined as a sex offender because of a finding of "not not guilty" does not come within this section either, despite the lack of an adjudication of delinquency. The majority finds this result absurd and solves an inconsistency of its own creation by holding that section 3-5(d) applies to a minor found "not not guilty" as well.

¶ 61       Finally, the majority holds that section 121 of the Sex Offender Notification Law "should be read to include juveniles found 'not not guilty' following a discharge hearing."

¶ 62       For me, this is a bridge too far. While it is clear that the legislature did not intend for a minor who is unfit as a result of developmental disability or mental illness to be subject to an adjudication hearing, the Juvenile Court Act gives the courts no direction as to the next step. As a matter of statutory interpretation, I agree that section 5-601(8) of the Juvenile Court Act, by providing for a fitness examination and fitness hearing pursuant to section 104-13 of the Code of Criminal Procedure, creates a gap in the law which this court must fill as a matter of due process, judicial efficiency, and practicality.

¶ 63       I also agree that once a minor is found unfit to proceed with adjudication, holding a discharge hearing along the lines of a section 104-25 hearing is a reasonable way to proceed. That said, I am unwilling to reach so far as to extend the scope of the Sex Offender Registration Act and the Sex Offender Community Notification Law to minors who have been found unfit for adjudication. These are issues for the legislature.

¶ 64       For these reasons, I respectfully dissent.