# Illinois Official Reports

## Appellate Court

***People v. Glenn*, 2018 IL App (1st) 161331**

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Respondent-Appellee, v. CLARRISA GLENN, Petitioner-Appellant. |
| District & No. | First District, Second Division<br>Docket No. 1-16-1331 |
| Filed | June 5, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 06-CR-810; the Hon. Leroy Martin, Judge, presiding. |
| Judgment | Reversed and remanded with directions. |
| Counsel on Appeal | The Exoneration Project, of Chicago (Joshua Tepfer, of counsel), for appellant.<br><br>No brief filed for the People. |
| Panel | JUSTICE NEVILLE delivered the judgment of the court, with opinion.<br>Presiding Justice Mason and Justice Pucinski concurred in the judgment and opinion. |

**OPINION**

¶ 1    When corrupt police officers demanded a bribe from Ben Baker, Baker and his wife, Clarissa Glenn, told the Chicago Police Department Office of Professional Standards (OPS) about the crime. The OPS did nothing to slow down the criminals. Instead, it informed the corrupt officers about the complaint and named the source. Corrupt officers arrested Baker and Glenn and used perjured testimony to induce the court to find Baker and Glenn guilty of felonies. Years later, federal authorities successfully prosecuted some of the criminals on the police force who induced the felony convictions of Baker and Glenn. Baker and Glenn petitioned for certificates of innocence under section 2-702 of the Code of Civil Procedure (Code). 735 ILCS 5/2-702 (West 2016). The State's Attorney did not oppose the petitions. The circuit court granted Baker's petition but denied Glenn's petition because she received a sentence of probation for the felony conviction. Glenn appealed. The State's Attorney has not opposed the appeal.

¶ 2    We find that section 2-702, interpreted in accord with our supreme court's construction of the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2016)), permits the circuit court to issue a certificate of innocence to a person sentenced only to probation. We reverse the circuit court's judgment and remand with directions to grant Glenn's petition.

¶ 3                                          BACKGROUND

¶ 4    In June 2004, Baker learned from a friend that Sergeant Ronald Watts of the Chicago Police Department intended to charge Baker with possession of heroin. Charles Lawrence, an associate of Watts, told Baker that Watts wanted to talk to Baker. Lawrence brought Baker to a pay phone, where Lawrence made a call. Lawrence told Baker he could avoid the charge of heroin possession if he gave Watts $1000. Baker took the phone and spoke directly with Watts. Baker told Watts he would not pay the extortion demanded.

¶ 5    On July 12, 2004, Watts and other officers entered and searched the home Baker and Glenn shared. Although the officers found nothing, they arrested Baker and charged him with possession of heroin, claiming that they found heroin in Baker's mailbox. Baker stayed in jail four months before obtaining release. Alvin Jones, a member of Watts's team, told Baker, "next time, *** it will stick."

¶ 6    On March 23, 2005, members of Watts's team arrested Baker and charged him with possessing heroin. Baker and Glenn contacted OPS and reported Watts's efforts to extort a bribe from Baker. On December 12, 2005, before trial on the March charge, Jones and other officers from Watts's team arrested Baker and Glenn and charged both of them with possessing heroin with intent to deliver.

¶ 7    The March 2005 charge came to trial in May 2006. Officer Nichols testified that on March 23, 2005, he saw Baker holding a clear plastic bag containing smaller bags of white powder. Nichols testified that Baker admitted that the bags contained heroin and it belonged to him. Baker testified about his prior contacts with Watts and the officers who worked with Watts. Baker said the officers brought the heroin presented in court. The trial court found Baker guilty and sentenced him to 18 years in prison.

¶ 8    The December 2005 charge came before the court in September 2006, when Baker and Glenn agreed to plead guilty to charges of possession in exchange for a sentence of 4 years'

imprisonment for Baker and one year of probation for Glenn. The trial court imposed the agreed sentences and said:

"I know *** what your position has been with regard to these police officers. ***

There has not been [a] sufficient showing *** that these are renegade police officer[s]. ***

If that should happen here in this case I would have no hesitation but to vacate all of the guilty findings, judgments, sentences ***.

If something should later develop, *** I would toss out these convictions but it's just not the situation that's before me at this time."

¶ 9 The record shows no participation by OPS in the eventual discovery of Watts's crimes. The corroboration for Baker's testimony arrived in 2012, when the United States Attorney filed a complaint charging that Watts and other members of his team stole money from the United States, by taking money from an agent posing as a courier working for persons who sold illegal narcotics. Watts and others on his team pleaded guilty to the charges. The court that sentenced Watts noted that Watts "put[ ] a false case on the confidential source that was involved in our investigation. Had him arrested on drug charges. And the source, who was a homeless unemployed alcoholic, felt he had no chance of successfully fighting that case so he pled guilty to a crime he didn't commit."

¶ 10 On January 9, 2015, Governor Pat Quinn pardoned Glenn and formally "restored [her] to all the rights of citizenship which may have been forfeited by the conviction." However, the governor did not expressly find Glenn's innocence as the basis for the pardon. In September 2015, the circuit court ordered the expungement of Glenn's criminal record. A few months later, the court vacated the convictions and the guilty pleas. The State's Attorney's office itself filed a motion to vacate Baker's convictions, and the prison released him in January 2016.

¶ 11 On March 30, 2016, Baker and Glenn filed a joint petition for certificates of innocence under section 2-702 of the Code. 735 ILCS 5/2-702 (West 2016). The State's Attorney did not oppose the petition. The circuit court granted Baker a certificate of innocence. The court entered a written order denying Glenn's petition. The court found:

"(1) Petitioner Glenn was convicted of one or more felonies by the State of Illinois;

(2) the judgment of conviction was vacated, and the indictment dismissed;

(3) Petitioner Glenn is innocent of the offenses charged in the indictment;

(4) Petitioner Glenn did not by her own conduct voluntarily cause or bring about her conviction; and

(5) Petitioner was not sentenced to a term of imprisonment."

¶ 12 The court clarified that the language of the statute compelled the result. The court added, "I would love to be wrong, Ms. Glenn." Glenn now appeals.

¶ 13 ANALYSIS

¶ 14 The circuit court has discretion to grant or deny a request for a certificate of innocence. *Rudy v. People*, 2013 IL App (1st) 113449, ¶ 11. However, where the court's decision rested on its interpretation of a statute, we review the decision *de novo*. *Rudy*, 2013 IL App (1st) 113449, ¶ 11.

¶ 15    Section 2-702(g) of the Code establishes that a person who petitions for a certificate of innocence must show:

> "(1) the petitioner was convicted of one or more felonies by the State of Illinois and subsequently sentenced to a term of imprisonment, and has served all or any part of the sentence;
>
> (2)(A) the judgment of conviction was reversed or vacated, and the indictment or information dismissed or, if a new trial was ordered, either the petitioner was found not guilty at the new trial or the petitioner was not retried and the indictment or information dismissed; ***;
>
> (3) the petitioner is innocent of the offenses charged in the indictment or information ***; and
>
> (4) the petitioner did not by his or her own conduct voluntarily cause or bring about his or her conviction." 735 ILCS 5/2-702(g) (West 2016).

¶ 16    The circuit court found that Glenn proved the elements listed in the statute, other than imprisonment. Glenn admits that the court that accepted her guilty plea sentenced her to one year of probation. Because she never violated the terms of her probation, she spent no time in prison or jail after the court imposed sentence.

¶ 17    Our supreme court confronted a similar problem with the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2016)). The Act, like section 2-702, limits relief to "person[s] imprisoned in the penitentiary." 725 ILCS 5/122-1(a) (West 2016). Defendants not imprisoned found themselves in need of relief from convictions entered in violation of the defendants' constitutional rights. In *People v. Warr*, 54 Ill. 2d 487 (1973), the court noted that the Act on its face did not apply to persons convicted of misdemeanors in violation of their constitutional rights. The *Warr* court said:

> "[W]e direct, in the exercise of our supervisory jurisdiction, that until otherwise provided by rule of this court or by statute a defendant convicted of a misdemeanor who asserts that in the proceedings which resulted in his conviction there was a substantial denial of his constitutional rights may institute a proceeding in the nature of a proceeding under the Post-Conviction Hearing Act." *Warr*, 54 Ill. 2d at 493.

¶ 18    Later, the supreme court abandoned the separate proceeding for misdemeanants and instead held that the Act governed postconviction relief for persons convicted of misdemeanors, even though the legislature never amended the requirement that petitioners be "imprisoned in the penitentiary." In *People v. Martin-Trigona*, 111 Ill. 2d 295, 299-300 (1986), the court said "the courts of this State have determined that persons on mandatory supervised release at the time their post-conviction petitions are filed may maintain such petitions under the Act [citation], as may petitioners sentenced to probation *** because in all those instances the petitioners were deprived of their liberty in some meaningful way."

¶ 19    We presume that the legislature knows the courts' interpretation of statutes. *Cripe v. Leiter*, 184 Ill. 2d 185, 197-98 (1998). The legislature's decision not to amend the Act after the supreme court issued *Martin-Trigona* supports the conclusion that the *Martin-Trigona* court correctly interpreted the phrase "[a]ny person imprisoned in the penitentiary." See *Cripe*, 184 Ill. 2d at 198. The phrase includes persons sentenced to probation. *Martin-Trigona*, 111 Ill. 2d at 299-300.

¶ 20    The legislature subsequently used similar language in section 2-702, which provides a separate avenue for relief from wrongful convictions. A certificate of innocence under section 2-702 entitles its recipient to seek relief from the State for wrongful imprisonment, by filing a petition for compensation in the Court of Claims. 735 ILCS 5/2-702(a) (West 2016). Other statutes provide that persons granted certificates of innocence have rights to mental health services, job search and job placement services, and other assistance. 20 ILCS 1015/2 (West 2016); 20 ILCS 1710/1710-125 (West 2016); 730 ILCS 5/3-1-2(o) (West 2016).

¶ 21    Under the circuit court's interpretation of section 2-702, an equal protection problem arises. Persons unjustly convicted of felonies and sentenced to probation, if they never violate probation and never serve a sentence of imprisonment, cannot obtain a certificate of innocence and cannot obtain the services provided for persons who obtain certificates of innocence. Persons similarly situated in all other respects who violate the terms of probation and who subsequently find themselves sentenced to prison for the underlying offenses (see *People v. Smith*, 105 Ill. App. 2d 14, 17 (1969)) will have the right to seek relief under section 2-702.

¶ 22    Courts have a "duty to construe a statute so as to affirm the statute's constitutionality and validity, if reasonably possible." *People v. Shephard*, 152 Ill. 2d 489, 499 (1992). "It is our duty so to interpret the statute as to promote its essential purposes and to avoid, if possible, a construction that would raise doubts as to its validity." *People v. Nastasio*, 19 Ill. 2d 524, 529 (1960). If we interpret "imprisonment" in section 2-702 in accord with its use in the Act, no obvious equal protection issues arise. Persons sentenced to probation may qualify for certificates of innocence, even if they never violate probation and therefore no court ever sentences them to spend time in prison. See *Martin-Trigona*, 111 Ill. 2d at 299-300. Under the broad interpretation of "imprisonment," Glenn meets all statutory criteria for the certificate of innocence. No society can claim to adhere to the rule of law until "the government and its officials and agents are limited and held accountable under the law." *Constraints on Government Powers*, World Justice Project, https://worldjusticeproject.org/our-work/ wjp-rule-law-index/wjp-rule-law-index-2017%E2%80%932018/factors-rule-law/constraints-government (last visited May 30, 2018). Issuing the certificate provides some small measure of acknowledgement of the sacrifice Glenn and Baker made in their effort to bring the rule of law to Chicago.

¶ 23                                         CONCLUSION

¶ 24    To avoid issues that could raise doubts as to the constitutionality of section 2-702 of the Code, we interpret "petitioner *** sentenced to a term of imprisonment" to include petitioners sentenced to probation. Accordingly, we reverse the judgment of the circuit court and remand with directions to grant the certificate of innocence.

¶ 25    Reversed and remanded with directions.