2024 IL App (1st) 221880

No. 1-22-1880

Opinion filed June 28, 2024

FIFTH DIVISION

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| *In re* T.C., D.E., M.W., and C.J., Minors, | ) | Appeal from the |
| | ) | Circuit Court of |
| (THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Cook County. |
| | ) | |
| Respondent-Appellee, | ) | No. 05 JD 2041 |
| | ) | 06 JD 0602 |
| v. | ) | 07 JD 4564 |
| | ) | 08 JD 1557 |
| T.C., D.E., M.W., and C.J., | ) | 08 JD 2529 |
| | ) | |
| Petitioner-Appellants.) | ) | Honorable |
| | ) | Michael McHale, |
| | ) | Judge, presiding. |

PRESIDING JUSTICE MITCHELL delivered the judgment of the court, with opinion.
Justice Mikva and Justice Lyle concurred in the judgment and opinion.

**OPINION**

¶ 1     Petitioners T.C., D.E., M.W. and C.J. appeal the denial of their petitions for certificates of innocence related to vacated juvenile adjudications of delinquency. The issue on appeal is whether the circuit court erred in holding that juvenile adjudications are not criminal convictions within the meaning of the Code of Civil Procedure, thereby foreclosing petitioners' ability to receive a certificate of innocence. For the following reasons, we affirm.

¶ 2                                        BACKGROUND

¶ 3     From 2000 until 2009, former Chicago Police Department Sergeant Ronald Watts and members of his tactical team engaged in widespread corrupt policing. By "routinely falsifying arrests, manufacturing evidence[,] and fabricating testimony," Watts and his team helped obtain convictions and adjudications of delinquency for hundreds of wrongly accused individuals. Among those individuals are the petitioners in this case, each of whom was adjudicated delinquent for possession of a controlled substance. After the "Watts Scandal" came to light, the circuit court vacated the adjudications upon motion by the Cook County State's Attorney's Office.

¶ 4     Subsequently, the circuit court offered to expunge petitioners' records; however, counsel for petitioners opted to pursue certificates of innocence instead. The State did not intervene or take a position in those proceedings. The circuit court determined that certificates of innocence are unavailable to juvenile defendants adjudicated delinquent. Accordingly, the circuit court denied the petitions. Petitioners timely appealed. Ill. S. Ct. R. 303(a)(1) (eff. July 1, 2017). The State elected not to participate in the appeal. We did allow an amicus brief from the Innocence Network, an association of independent organizations that provide legal and investigative assistance to prisoners seeking post-conviction relief.

¶ 5                                         ANALYSIS

¶ 6                                   A. Statutory Language

¶ 7     In 2008, the Illinois legislature amended the Code of Civil Procedure to allow innocent individuals who were wrongfully convicted of crimes that they did not commit the opportunity to seek certificates of innocence. 735 ILCS 5/2-702 (West 2022). Certificates of innocence empower these innocent individuals to "obtain relief through a petition in the Court of Claims." *Id.* §2-

702(a). This relief includes the ability to seek compensation, job training and placement, and mental health services. See 705 ILCS 505/8(c) (West 2022); 20 ILCS 1015/2 (West 2022); 20 ILCS 1710/1710-125 (West 2022). These remedies are intended to help offset the long-term negative consequences of wrongful conviction and, at least in some small measure, to hold "the government and its officials and agents *** accountable under the law." (Internal quotation marks omitted.) *People v. Glenn*, 2018 IL App (1st) 161331, ¶ 22. Petitioners assert that an interpretation of the Code that excludes juveniles from receiving these benefits runs counter to these express purposes of the amendment.

¶ 8 Whether a juvenile adjudication is a criminal conviction within the meaning of the Code is a question of law that we review *de novo*. *People v. Taylor*, 221 Ill. 2d 157, 162 (2006). Our role in interpreting the Code is to "ascertain and give effect to the legislature's intent, and the best indicator of that intent is the statutory language, given its plain and ordinary meaning." *State ex rel. Leibowitz v. Family Vision Care, LLC*, 2020 IL 124754, ¶ 34. If the language of the statute "is clear and unambiguous, it is given effect as written without resort to other aids of statutory interpretation." *Dew-Becker v. Wu*, 2020 IL 124472, ¶ 12. We are not permitted to read "exceptions, limitations, or conditions that the legislature did not express" into the Code. *Illinois State Treasurer v. Illinois Workers' Compensation Commission*, 2015 IL 117418, ¶ 21. However, it is insufficient to read a provision in isolation; instead, "[t]he statute should be evaluated as a whole, with each provision construed in connection with every other section." *Jackson v. Board of Election Commissioners of City of Chicago*, 2012 IL 111928, ¶ 48. And where the statute is ambiguous, we "may consider the reason and necessity for the law, the evils it intended to remedy, and its ultimate aims." *People v. Pullen*, 192 Ill. 2d 36, 42 (2000). In addition, "we must presume

that when the legislature enacted the law, it did not intend to produce absurd, inconvenient or unjust results." *In re Estate of Wilson*, 238 Ill. 2d 519, 560 (2010).

¶ 9      Here, the Code provides that, to be eligible for a certificate of innocence, petitioners must show, by a preponderance of the evidence, that they were "convicted of one or more felonies by the State of Illinois ***." 735 ILCS 5/2-702(g)(1) (West 2022). The General Assembly defined "conviction" in the Criminal Code as "a judgment of conviction or sentence entered upon a plea of guilty or upon a verdict or finding of guilty of an offense, rendered by a legally constituted jury or by a court of competent jurisdiction authorized to try the case without a jury." 720 ILCS 5/2-5 (West 2022).[1] And the Juvenile Court Act provides that, in the context of juvenile court records, "[a] juvenile adjudication shall never be considered a conviction, nor shall an adjudicated individual be considered a criminal." 705 ILCS 405/1-8(a) (West 2022).

¶ 10      Nevertheless, Illinois courts have occasionally held that juvenile adjudications are convictions in certain circumstances. Petitioners contend that these cases demonstrate that Illinois courts have drawn these conclusions "in order to yield the least harsh result for minors unless the statute expressly directed otherwise." Petitioners are mistaken. Illinois courts have consistently determined that a juvenile adjudication is or is not a criminal conviction based on the statutory language at issue in the case, regardless of the outcome. See e.g., *In re J.W.*, 204 Ill. 2d 50, 64 (2003) (holding that, because the Sex Offender Registration Act defines "convicted" to include

---

[1] Amicus suggests that we should use the ordinary, colloquial meaning of conviction, that is, "being determined to have committed an offense." And amicus cites several cases from other jurisdictions that have employed the ordinary meaning of "conviction" in the context of juvenile adjudications. See, *e.g.*, *State v. Cassidy D.*, 29 A.3d 190, 193, 200 (Conn. Super. Ct. 2010); *Palmer v. Commonwealth*, 609 S.E.2d 308, 308 (Va. 2005). There is no reason to do so where the General Assembly has provided a definition.

"adjudicated," in that context, an adjudication is the equivalent of a conviction); *People v. Jones*, 2016 IL 119391, ¶ 33 (determining that a juvenile adjudication is a prior conviction for purposes of *Apprendi v. New Jersey*, 530 U.S. 466 (2000) under 730 ILCS 5/5-5-3.2(b)(7)); *In re Jonathon C.B.*, 2011 IL 107750, ¶ 97 (concluding that 1999 amendments to the Juvenile Court Act did not "render delinquency adjudications the equivalent of felony convictions, so that juveniles have a constitutional right to a jury trial under the Act."). While the protection of minors may occasionally support a court's conclusion, courts are constrained from reading criminal convictions to include juvenile adjudications where the statutory text does not do so. *Taylor*, 221 Ill. 2d 157, 179 (2006) ("the legislature could have included juvenile adjudications within its general definition of 'conviction' in the Code ***. It did not do so, and we are constrained to find that it had no intent to do so."). Indeed, the fact that the General Assembly has explicitly chosen to include juvenile adjudications within the definition of convictions in some cases and chosen not to in others is further evidence "that the legislature understands the need for specifically defining a juvenile adjudication as a conviction when that is its intention." *Id.* at 178. Thus, the General Assembly's failure to define "prior conviction" to include "juvenile adjudication" in this case is fatal to petitioners' argument. A juvenile who has been adjudicated delinquent has not been convicted of a felony within the meaning of the Code and is, therefore, ineligible for a certificate of innocence.

¶ 11 Petitioners and amicus argue that these principles should be set aside in order to further the stated purposes of the Juvenile Court Act and the Code of Civil Procedure. The purpose of the Juvenile Court Act is "to secure for each minor subject hereto such care and guidance *** as will serve the safety and moral, emotional, mental, and physical welfare of the minor and the best interests of the community ***." 705 ILCS 405/1-2(1) (West 2022). The certificate of innocence

section of the Code attempts to address the fact "that innocent persons who have been wrongly convicted of crimes in Illinois and subsequently imprisoned have been frustrated in seeking legal redress due to a variety of substantive and technical obstacles in the law ***." 735 ILCS 5/2-702(a) (West 2022). This argument also rests on the false equivalency of a criminal conviction and a juvenile adjudication. The purpose of the certificate of innocence statute is explicitly limited to those "wrongly convicted of crimes." *Id.* As explained above, without express language to the contrary, juveniles adjudicated delinquent are not convicted of crimes.

¶ 12    Petitioners and amicus suggest that this court should read the statute expansively, as we did in *Glenn*. 2018 IL App (1st) 161331, ¶ 22. There, we determined that the certificate of innocence statute's requirement that petitioners must be "sentenced to a term of imprisonment" and have "served all or any part of the sentence" did not prohibit petitioners sentenced to probation from seeking a certificate of innocence. *Id.* We analogized to *People v. Martin-Trigona*, 111 Ill. 2d 295. 299-300 (1986), where the Illinois Supreme Court determined that post-conviction petitioners who were sentenced to mandatory supervised release, sentenced to probation, or released on parole could challenge their convictions under the Post-Conviction Hearing Act, notwithstanding language in the act that required petitioners to be "imprisoned in the penitentiary." Thus, because "[w]e presume that the legislature knows the courts' interpretation of the statutes," we concluded that the legislature's use of similar language in the certificate of innocence section required that the language be interpreted to have the same meaning. *Glenn*, 2018 IL App (1st) 161331, ¶ 19 (citing *Cripe v. Leiter*, 184 Ill. 2d 185, 197-98 (1998)).

¶ 13    This case is not on all fours with *Glenn*. Here, there is no supreme court precedent from which to conclude that a juvenile adjudication should be treated as conviction. The case law is

squarely against such a reading. Even drawing a one-to-one comparison to the Post-Conviction Hearing Act, as in *Glenn*, provides petitioners no benefit. This court has consistently held that the act does not reach juvenile adjudications. See *In re Vincent K*, 2013 IL App (1st) 112915, ¶ 50; *In Interest of R.R.*, 75 Ill. App. 3d 494, 496 (1979); *In Interest of A.W.H.*, 95 Ill. App. 3d 1106, 1108 (1981).

¶ 14    Petitioners and amicus further argue that the certificate of innocence statute must apply to juveniles because in all juvenile delinquency procedures under the Juvenile Court Act, "minors shall have the procedural rights of adults in criminal proceedings, unless specifically precluded by laws that enhance the protection of such minors." 705 ILCS 405/5-101(3). They look to the Illinois Supreme Court's holding in *In re S.B.*, 2012 IL 112204, for support.[2] Importantly, *S.B.* did not involve a determination of whether a "juvenile adjudication" could qualify as a "conviction." There, the court determined that the fourteen-year-old defendant was entitled to the same fitness procedures as adults, "including discharge hearings," because the procedures "exist to safeguard the due process rights of defendants." *Id.* ¶ 21. These are pretrial procedures that determine how a defendant should be treated should he be found unfit to stand trial. Significantly, "[t]he due process

---

[2] Amicus also contends that *People v. Poliak*, 124 Ill. App. 3d 550, 553-56 (1984), requires this court to conclude that a juvenile adjudication is a criminal conviction under the Code of Civil Procedure. Since 1984, the Illinois Supreme Court has provided additional clarity regarding how to analyze whether a juvenile adjudication is the equivalent of a conviction. While it has never been overturned, *Poliak* provides petitioners with little support. *Poliak* involved the question of whether a juvenile adjudication in Colorado was the equivalent of a criminal prosecution for purposes of double jeopardy within the meaning of a now outdated section of the Illinois Criminal Code. *Id.* at 552-53. If a juvenile adjudication were not a criminal prosecution, an adult defendant in a criminal proceeding would be entitled to the procedural right of double jeopardy, but a juvenile would be open to multiple prosecutions. Here, petitioners were not involved in a criminal proceeding and there is no procedural right to a petition for a certificate of innocence. Therefore, *Poliak* is inapposite.

clause of the fourteenth amendment bars prosecution of a defendant unfit to stand trial." *People v. Holt*, 2014 IL 116989, ¶ 51. Thus, competency is itself a due process right given to adult defendants in criminal proceedings, and the procedures designed to protect that right must be extended to juveniles, especially when the Juvenile Court Act is silent on the subject. However, there is no due process right to remedial measures from the state for wrongful convictions. See, *e.g.*, University of Michigan Law School, *Compensation Statutes: A National Overview* (2024) (listing the twelve states that do not provide compensation to defendants who were wrongfully convicted). Further, a petition for a certificate of innocence is not a procedure under article V of the Juvenile Court Act, nor is it a "procedural right of adults in criminal proceedings;" it is a separate, collateral, civil proceeding. That is, adults in criminal proceedings do not have the right to petition for a certificate of innocence. Adults only have the right to bring such a petition after the criminal process has ended. Accordingly, because there is no due process right to a certificate of innocence, because seeking a certificate of innocence is not a procedure under the Juvenile Court Act, and because such a proceeding is not criminal in nature, extending the certificate of innocence statute to cover juvenile adjudications is not necessary to protect the due process rights of juveniles.

¶ 15                          B. Equal Protection

¶ 16    Petitioners and amicus also argue that reading the certificate of innocence statute to exclude juvenile adjudications would violate their rights to equal protection under the law. A statute violates the equal protection clauses of the Illinois and United States Constitutions if it treats similarly situated individuals differently without an appropriate reason for doing so. *Id.* ¶ 14. Thus, as a threshold matter, we must determine whether the two groups at issue are "in all relevant

respects alike" in light of the purposes "of the particular legislation." *Id.* ¶ 15. This review is *de novo*. *Id.* ¶ 13.

¶ 17    Petitioners in this case are not sufficiently similarly situated to their adult counterparts to maintain an equal protection challenge. While a juvenile adjudication may have significant direct and collateral harms for individuals, the Illinois justice system recognizes that these harms are distinct from the threat of criminal prosecution and conviction. A criminal conviction involves "severe deprivations of liberty ***." *In re Jonathon C.B.*, 2011 IL 107750, ¶ 117. With limited exceptions, a juvenile adjudication results in a sentence that, at its most severe, terminates automatically when the juvenile reaches 21 years of age. 705 ILCS 405/5-755(1) (West 2022); *In re Jaime P.*, 223 Ill. 2d 526, 539 (2006). If the court imposes probation, it is similarly limited to "5 years or until the minor has attained the age of 21 years." 705 ILCS 405/5-715(1) (West 2022). Further, all juvenile law enforcement records are automatically expunged under certain conditions. 705 ILCS 405/5-915(0.1)(a) (West 2022). The Illinois Supreme Court has repeatedly reaffirmed the conclusion that "rehabilitation remains a more important consideration in the juvenile justice system than in the criminal justice system and that there are still significant differences between the two ***." *In re Jonathon C.B.*, 2011 IL 107750, ¶ 93 (quoting *Taylor*, 221 Ill. 2d at 170). Thus, "the legislature recognized that the juvenile court system should protect the public, [but] it tempered that goal with the goal of developing delinquent minors into productive adults, and gave the trial court options designed to reach both goals." *Id.* ¶ 94 (quoting *In re Rodney H.*, 223 Ill. 2d 510, 520 (2006)).

¶ 18    Accordingly, the law recognizes a juvenile adjudication as less severe and more "protective in nature" than a criminal conviction. *Id.* The law also limits who may receive a certificate of

innocence to only those who have been "convicted of one or more *felonies* by the State of Illinois." (Emphasis added) 735 ILCS 5/702(b). Individuals wrongly convicted of misdemeanors, even if the conviction resulted in confinement, may not petition for certificates of innocence. Thus, contrary to amicus's contentions that "the severity of formal punishment *** is irrelevant here," the purpose of the certificate of innocence statute is to provide a method of relief for those individuals whose wrongful convictions resulted in the most severe harms. Given the distinctions recognized by the Illinois Supreme Court between convictions and juvenile adjudications, juveniles adjudicated delinquent are not among these individuals and therefore are not similarly situated to individuals wrongly convicted of felonies.

¶ 19    Petitioners and amicus argue that reliance on *In re Jonathon C.B.* is misplaced because, there, the court analyzed whether defendants were similarly situated in the context of the Juvenile Court Act and the Illinois Criminal Code. 2011 IL 107750, ¶ 118. Here, petitioners raise an equal protection claim based on the Illinois Code of Civil Procedure; therefore, they argue, *Jonathon C.B.* is not controlling. However, while *Jonathon C.B.* may not control the outcome here, its reasoning is persuasive and applies at least as well to this case. Juveniles adjudicated delinquent and adults convicted of felony offenses are not similarly situated regardless of whether the statute being analyzed is a part of the Criminal Code or the Civil Code.

¶ 20    Petitioners and amicus further argue that the harms faced by juveniles and adults are similar and that juveniles are equally in need of relief from these harms. To be sure, juveniles who become involved in our justice system from a young age face significant challenges, and rehabilitation and reentry into society are of particular importance for them. However, these arguments may be better directed toward the legislature so that the law may be changed, rather than to the judiciary, which

may only interpret the statutes before it. Regardless, the fact that petitioners face similar collateral consequences following a delinquent adjudication to convicted felons does not mean that the two groups are similarly situated. See *In re Jonathon C.B.*, 2011 IL 107750, ¶ 89. Accordingly, because petitioners cannot demonstrate that they are similarly situated to individuals convicted of felonies, they cannot maintain an equal protection challenge. The circuit court correctly denied their petitions.

¶ 21                                    CONCLUSION

¶ 22    The judgment of the circuit court of Cook County is affirmed.

¶ 23    Affirmed.

***In re T.C., D.E., M.W., and C.J., Minors*, 2024 IL App (1st) 221880**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, Nos. 05-JD-02041, 06-JD-00602, 07-JD-04563, 08-JD-01557, 08-JD-02529; the Hon. Michael McHale, Judge, presiding. |
| **Attorneys for Appellant:** | Debra Loevy and Joshua Tepfer, of the Exoneration Project at the University of Chicago Law School, of Chicago, and Joel Flaxman of the Law Offices of Kenneth N. Flaxman P.C., of Chicago, for appellants. |
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago, for the People. |
| *Amicus curiae*: | Malorie Medellin, of Latham & Watkins LLP, of Chicago, and Sarang Vijay Damle, Graham B. Haviland, Tyce R. Walters, and Jake Rush, of Latham & Watkins LLP, of Washington, D.C., for *amicus curiae* The Innocence Network. |