(No. 61302.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. ANTHONY MARTIN-TRIGONA, Appellee.

*Opinion filed February 21, 1986.*

Neil F. Hartigan, Attorney General, of Springfield, and Richard M. Daley, State's Attorney, of Chicago (Mark L. Rotert, Assistant Attorney General, of Chicago, and Michael E. Shabat, Joan S. Cherry, Thomas V. Gainer, Jr., and Erin J. Jennings, Assistant State's Attorneys, of counsel), for the People.

Paul Bradley, of Chicago, for appellee.

JUSTICE SIMON delivered the opinion of the court:

Anthony Martin-Trigona was convicted of four counts of theft and three counts of forgery after a bench trial in the circuit court of Cook County. Waiving his right to remain silent, Martin-Trigona testified in his own behalf that he had performed the alleged acts of theft and forgery without the necessary *mens rea* to support a finding of criminal liability. The State was then allowed to impeach Martin-Trigona's testimony with evidence that

he had been convicted of mail fraud in a United States district court.

Following his conviction in the circuit court, the United States Court of Appeals for the Seventh Circuit reversed Martin-Trigona's Federal mail fraud conviction in July 1982; the ground for the reversal was that he had been denied assistance of counsel at his trial. (*United States v. Martin-Trigona* (7th Cir. 1982), 684 F.2d 485.) Relying on *Loper v. Beto* (1972), 405 U.S. 473, 31 L. Ed. 2d 374, 92 S. Ct. 1014 (evidence of a prior conviction is inadmissible to impeach a defendant when the earlier conviction is obtained in violation of the defendant's right to counsel), Martin-Trigona appealed to our appellate court claiming that his circuit court convictions were constitutionally tainted by admission of the Federal conviction to impeach his credibility. The appellate court affirmed Martin-Trigona's State convictions, but it remanded the case to the circuit court for resentencing in light of Martin-Trigona's expurgated criminal record. (111 Ill. App. 3d 718.) His petition for leave to appeal his conviction to this court was denied. In September of 1983, Martin-Trigona was resentenced by the circuit court to one year's probation, satisfied on that date by time already served in a Federal prison.

On January 20, 1983, the Federal indictments against Martin-Trigona were dismissed. Six months later, on June 20, before resentencing on the State convictions and while on release on an appeal bond, Martin-Trigona filed this action in the circuit court of Cook County under the Post-Conviction Hearing Act (the Act) (Ill. Rev. Stat. 1981, ch. 38, par. 122—1 *et seq.*) seeking a new trial; in September of that year, four weeks after resentencing Martin-Trigona, the trial judge vacated his State convictions and granted his request for a new trial. On the State's appeal, the appellate court affirmed the order of the circuit court granting Martin-Trigona a

new trial. (129 Ill. App. 3d 212.) Pursuant to Supreme Court Rule 315 (94 Ill. 2d R. 315), we granted the State leave to appeal to this court. We now affirm the decision of the appellate court.

In its appeal the State argues that Martin-Trigona was released on an appeal bond and thus not imprisoned in the penitentiary at the time he filed for post-conviction relief; therefore, the State contends, relief under the Act was unavailable. The Act provides in pertinent part:

> "Any person *imprisoned in the penitentiary* who asserts that in the proceedings which resulted in his conviction there was a substantial denial of his rights under the Constitution of the United States or of the State of Illinois or both may institute a proceeding under this Article." (Emphasis added.) Ill. Rev. Stat. 1981, ch. 38, par. 122–1.

This court has previously defined what class of convicted persons may take advantage of the Act's remedial provisions. In *People v. Dale* (1950), 406 Ill. 238, 246, the court determined that the legislature intended by use of the words "imprisoned in the penitentiary" to prevent persons who have completed their sentences from engaging the Act's remedial machinery solely to purge their criminal records; only persons whose liberty is actually restrained are entitled to the protection afforded by the Act. Later, in *People v. Davis* (1973), 54 Ill. 2d 494, 496, this court announced that post-conviction petitioners need not be incarcerated to proceed under the Act, but only be convicted of "crimes *punishable* by imprisonment in the penitentiary." (Emphasis added.) Applying *Davis* and *Dale,* the courts of this State have determined that persons on mandatory supervised release at the time their post-conviction petitions are filed may maintain such petitions under the Act (*People v. Correa* (1985), 108 Ill. 2d 541), as may petitioners sentenced to

probation (*People v. Montes* (1980), 90 Ill. App. 3d 355) and persons released on parole (*People v. Placek* (1976), 43 Ill. App. 3d 818) because in all those instances the petitioners were deprived of their liberty in some meaningful way.

As with actual incarceration, restraints on liberty accompanying probation, parole and release on appeal bond are unacceptable when they are imposed in violation of an individual's State or Federal constitutional rights. Recognition of this principle undergirds the decisions in *Correa, Montes,* and *Placek,* and it is controlling in this case. Release on an appeal bond carries seriously restrictive conditions (see Ill. Rev. Stat. 1983, ch. 38, par. 110—10), and it was uncontested in this case that Martin-Trigona, being subject to an appeal bond, could not leave the confines of the State without permission of the court, could not depart the country under any circumstances, and was restricted in his ability to change his place of residence within the State.

In *Correa,* we allowed convicted persons on mandatory supervised release to petition under the Act because "the released prisoner may be taken into custody for a violation of the conditions of his release." (*People v. Correa* (1985), 108 Ill. 2d 541, 546.) The same may be said for convicted persons released on appeal bond; it has long been recognized that persons at liberty on bond are "always on a string, and [the State] may pull the string whenever [it] please *** for that is only a continuance of the former imprisonment." (*Anonymous* (Q.B. 1704), 6 Modern Rep. 231, 231.) We therefore hold that defendants who avoid incarceration by posting an appeal bond are "imprisoned in the penitentiary" within the meaning of the Act. See *Capler v. City of Greenville* (5th Cir. 1970), 422 F.2d 299, 301 (convicted persons released on an appeal bond are "in custody" for purposes of Federal *habeas corpus*).

Although conceding that this court has liberally construed the Act "to afford a convicted person an opportunity to present questions of deprivation of constitutional rights" (*People v. Pier* (1972), 51 Ill. 2d 96, 98), the State purports to distinguish this case from others in which courts of this State have held post-conviction petitioners enjoying conditionally granted liberty to be "imprisoned" for purposes of obtaining post-conviction relief under the Act. The State would distinguish those cases from that before us on the ground that the persons seeking relief in those cases were serving sentences at the time they filed for post-conviction relief, whereas Martin-Trigona filed his petition while awaiting resentencing. The State reads the Act to allow relief only to convicted persons who are both imprisoned and serving a sentence when the petition is filed, but such a reading would mean that convicted persons actually confined within a penal institution could not petition for relief under the Act while awaiting sentencing or resentencing following an appeal even though this case demonstrates that three quarters of a year might elapse in the interim. We can find no principled reason for adopting that requirement.

Relief is available under the Act to all persons whose liberty is constrained by virtue of a criminal conviction, and a criminal sentence is relevant only so far as it predicts at what point in time any particular convicted person will be released from the fetters accompanying his conviction so that he is no longer in need of the Act's remedial procedures to secure his liberty. Whether a convicted person is serving a sentence rather than on bond awaiting a sentence at the time the post-conviction petition is filed is clearly of no relevance to the policies embodied in the Act or the rationale, articulated in *Dale* and reaffirmed by *Correa*, for this court's determination of who may maintain such a petition. In *Correa* we reasoned that a petitioner not actually incarcerated could

nonetheless maintain his post-conviction action since "he had not served his sentence at the time the petition was filed." (*People v. Correa* (1985), 108 Ill. 2d 541, 547.) *A fortiori*, a convicted person who has yet to be sentenced can bring an action under the Act since, either serving a sentence or awaiting a sentence as in Martin-Trigona's case, the convicted person who has not completed his sentence is prevented from fully exercising the liberties enjoyed by free people.

As we recently explained in *Correa*, the Act was our General Assembly's response to the call in *Young v. Ragen* (1948), 337 U.S. 235, 93 L. Ed. 1333, 69 S. Ct. 1073, for more complete remedial procedures to ensure that criminal defendants are not deprived of their freedom without due process of law. (See *People v. Dale* (1950), 406 Ill. 238.) The Act was intended to fill the gaps between then existing remedies and provide for judicial review in circumstances where direct review, *habeas corpus* and *coram nobis* were unavailable. *People v. Correa* (1985), 108 Ill. 2d 541, 546.

In this case, direct review of the State convictions has already been exhausted, and the State itself has argued that Martin-Trigona is not entitled to relief by *coram nobis* (Ill. Rev. Stat. 1983, ch. 110, par. 2—1401; *People v. Loftus* (1948), 400 Ill. 432, 433). To deny relief under the Act merely because Martin-Trigona, whose conviction had been affirmed by the appellate court, had yet to be resentenced when this action was filed would cause needless delay in future cases and would otherwise frustrate the intent of our General Assembly since this court has previously denied the availability of *habeas corpus* (Ill. Rev. Stat. 1983, ch. 110, par. 10—101 *et seq.*) to persons released on bail. (*Creek v. Clark* (1981), 88 Ill. 2d 54.) To the position advocated by the State this court has already given its answer: "The interpretation of the Act which the State now urges would cause the remedy un-

der that act to resemble the relief available through habeas corpus. [Citation.] We cannot so limit the Act, but must construe it liberally to accomplish the purposes for which it was enacted." *People v. Correa* (1985), 108 Ill. 2d 541, 546.

It remains to say whether introduction of Martin-Trigona's prior Federal conviction, obtained in violation of his right to counsel, constituted harmless error as the State contends. (*Chapman v. California* (1967), 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824.) The State argues that the trial judge, who also presided over the post-conviction hearing, considered evidence of Martin-Trigona's prior Federal convictions only for purposes of sentencing, and even if he had considered that conviction to impeach Martin-Trigona's credibility as a witness, the error was harmless since there was overwhelming evidence of Martin-Trigona's guilt. In support of that contention, the State notes that when, at the post-conviction hearing, the judge was informed by the State that he was empowered by the Act to find Martin-Trigona innocent, the judge refused, saying: "[n]o way that I am going to find him not guilty. *** I thought the evidence very persuasive, very substantial."

However, at the post-conviction hearing the judge also said that he had used the prior Federal convictions in his determination of Martin-Trigona's guilt, saying, "I don't see how I can let it stand. It seems wrong. *** Now, we have that conviction *that I considered,* hanging out there." (Emphasis added.) Viewed most favorably to the defendant, the record supports the conclusion that the prior Federal conviction was relied upon by the trier-of-fact in determining guilt or innocence, and this reliance was in violation of *Loper v. Beto* (1972), 405 U.S. 473, 31 L. Ed. 2d 374, 92 S. Ct. 1014. At the very least, we do not believe we should second-guess a determination reached by the circuit judge who presided at the

bench trial that his consideration of the earlier conviction was not harmless error. The circuit judge made his decision to vacate Martin-Trigona's convictions with the insight of one who knew precisely what had led to those convictions in the first place, and a determination from that vantage point that harmful error occurred cannot lightly be ignored. This is particularly true where the error complained of rises to constitutional magnitude; in such cases error cannot be denominated harmless unless it is harmless beyond a reasonable doubt. (*People v. R.C.* (1985), 108 Ill. 2d 349, 355; *People v. Wilkerson* (1981), 87 Ill. 2d 151, 157.) We therefore defer to the decision of the trial judge and agree with the appellate court that Martin-Trigona is entitled to a new trial.

*Judgment affirmed.*