THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. WILLIAM JOHNSTON, Defendant-Appellant.

Fifth District No. 5—85—0359

Opinion filed October 17, 1986.—Rehearing denied November 7, 1986.

JONES, J., concurring in part and dissenting in part.
HARRISON, J., dissenting.

Randy E. Blue and Larry R. Wells, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Kathleen M. Alling, State's Attorney, of Mt. Vernon (Kenneth R. Boyle and Stephen E. Norris, both of State's Attorneys Appellate Service Commission, and Terrence R. Lyons, Jr., of counsel), for the People.

JUSTICE WELCH delivered the judgment of the court:

The defendant, William Johnston, was convicted of attempted murder, aggravated kidnaping, and armed robbery by the circuit court of Jefferson County sitting without a jury. Defendant was sentenced to concurrent terms of 7 years' imprisonment on the armed-robbery conviction, 15 years' imprisonment on the aggravated kidnaping conviction and an extended term of 40 years' imprisonment on the attempted-murder conviction. On appeal, defendant contends (1) that he was denied effective assistance of counsel where the same attorney who was alleged to have incompetently represented him at trial argued the post-trial motion; (2) the trial court abused its discretion in sentencing defendant to an extended term on the attempted-murder conviction; (3) the mittimus should be corrected to reflect that defendant is to receive 132 days credit for time served in the county jail; and (4) that defendant is entitled to credit against the

$25 fine payable to Crime Victims Assistance Fund.

The evidence introduced at trial will be discussed only to the extent necessary to understand the issues on appeal. At approximately 5:30 a.m. on January 18, 1985, defendant went to the office of William Nave, owner of a trucking company, who let defendant in, as defendant had previously worked for him. Defendant, who did not appear intoxicated or drugged, threatened Nave with a .25-caliber automatic pistol and forced Nave to write a check payable to defendant in the amount of $3,700. Defendant forced Nave to drive to the Rend Lake Conservancy District, where he tied Nave first on the snow and then to a tree. Defendant did not leave the area but returned to Nave and forced him to drive to a remote and almost inaccessible area of the district during the winter. Nave was forced to take the cover off of the urinal of one of the district's outhouses and forced to jump down into the hole, where defendant fired two shots at Nave, one of which struck Nave in the brain, causing great pain and the permanent loss of right peripheral vision in both eyes. Defendant latched the outhouse door, went to the bank, and used part of the check to pay overdue bills. Nave was able to get out of the hole and out of the outhouse. He attempted to walk across part of the lake, which he thought was frozen over, but twice fell through the ice. Nave found a pickup truck and used a radio to call the owner, a farmer, who was working in the field. The farmer took Nave to a Mt. Vernon hospital, from which he was transferred to a St. Louis hospital for the purpose of surgery. January 18, 1985, was a "very cold" day and Nave was cold, shaking, and bloody when found.

Defendant raised the issue of insanity and intoxication due to drugs. Defendant introduced evidence that he was depressed due to his failure to secure full-time employment, which resulted in lack of resources to pay household bills and repay various installment loans. Defendant's wife testified that defendant was taking, "off and on," valium, ludiomal, nervene, and codeine. Defendant testified that it was possible that he took a pill to keep him from sleeping on the evening prior to the offenses but he fell asleep anyway. At trial, defendant's brother opined that defendant was abusing drugs. Kenneth Peart, a physician specializing in family practice, testified that defendant came to him in January 1984 complaining of nerve problems and the inability to sleep. Dr. Peart prescribed ludiomal, an antidepressant, and valium, a tranquilizer or depressant. Dr. Peart explained that ludiomal takes about two weeks to work and the patient needs something to hold him over until the ludiomal takes ef-

fect. The valium would not keep the ludiomal from working. On June 28, 1984, Dr. Peart again prescribed ludiomal, valium, and vitamins. On November 12, 1984, defendant stated that he had fallen off a tractor and injured his right elbow; therefore, Dr. Peart prescribed a muscle relaxant and aspirin which contains codeine. A week later Dr. Peart examined defendant for an Interstate Commerce Commission physical and found defendant had improved physically and mentally. Dr. Peart next saw defendant in the hospital on January 24, 1985, as defendant had allegedly taken 17 valium tablets. On January 25, 1985, Dr. Peart talked with defendant, who was depressed. Peart opined that one could be addicted to valium and that ludiomal does not produce a "high." Amphetamines taken in conjunction with valium might "rev" up a person but the valium would have a calming effect. Michael Anthis, one of the officers who arrested defendant and searched defendant's home on the evening of January 18, 1985, testified that defendant did not appear drugged or intoxicated when arrested.

The parties stipulated that Dr. Julius Clyne would testify by means of a telephone conference call. Dr. Clyne testified from Belleville while the parties, the court, court personnel, and spectators heard the doctor's testimony in a room at the Jefferson County courthouse. Dr. Clyne, a neuropsychiatrist, examined defendant on March 4, 1985, to determine whether the patient was capable of standing trial and whether he was insane at the time the crime was committed. Dr. Clyne found no paranoid ideations or delusional thinking by defendant. Defendant stated that he had been taking 75 milligrams of ludiomal and 10 milligrams of valium prior to committing the acts of January 18, 1985; however, the foregoing does not account for any type of delusional thinking or hallucinatory activity or any type of psychotic figure that might cause the person to be insane. Dr. Clyne opined that defendant "was competent to stand trial and that he knew perfectly well what he was doing at the time he committed the act." Dr. Clyne found no evidence of thought disorders, although he concluded defendant was depressed at the time of the offenses.

In defendant's post-trial motion, he alleged:

"a. That he (defense counsel) agreed and stipulated that the expert psychiatrist witness could testify by conference telephone which lead to an ineffective cross-examination of said expert witness.

b. That the defense attorney failed to bring out an [sic] important information from Dr. Peart concerning the effective

[*sic*] combined drug usage."

In denying the post-trial motion, the court stated that defendant was given "an extremely liberal opportunity to examine" Dr. Clyne. The court found that "there was no inhibition at any time of the examination of Dr. Clyne in any manner as to cross-examination or to any of the issues raised by Dr. Clyne. There was no inhibition, no error of restraint, no lack of opportunity to completely and totally question Dr. Clyne regarding any of his findings." The court lastly found that the examination of Dr. Clyne by telephone conversation was equivalent to in-court examination. As to the failure to fully cross-examine Dr. Peart, the court found that even if there was some information that Peart could have offered concerning the combined effect of drug usage, Peart's knowledge of defendant in close proximity to the event in question would have been so removed as to time as to have little effect on the court's consideration.

■ Defendant initially contends that he was denied effective assistance of counsel where the same trial attorney who was alleged to have incompetently represented defendant at trial argued the post-trial motion. In this appeal defendant does not dispute the State's contention that defendant was not prejudiced by the trial court's failure to appoint substitute counsel to argue his post-trial motion. Defendant does not argue on appeal that his allegations of ineffective assistance of his trial counsel had any merit. In this appeal defendant argues instead: "The existence of a conflict based upon factual allegations involving the attorney's performance prevents This Court from considering trial counsel's actual incompetence, because the defendant did not have a conflict-free hearing on the issue below." As we note more fully below, our review of the record indicates there is no merit in the incompetence-of-counsel issue. Thus the question is whether we must remand for a new post-trial motion hearing where defendant essentially admits, and we agree, that his ineffective-assistance-of-counsel argument was without merit.

We do not believe the rule is as extreme as defendant maintains it to be. Even an error of constitutional magnitude, such as violation of right to counsel, will be disregarded where the error is harmless beyond a reasonable doubt. (See *People v. Martin-Trigona* (1986), 111 Ill. 2d 295, 303-04, 489 N.E.2d 1356, 1359-60; 87 Ill. 2d R. 651(a).) Defendant bases his argument upon the recent Illinois Supreme Court case of *People v. Krankel* (1984), 102 Ill. 2d 181, 464 N.E.2d 1045. In *Krankel*, the supreme court found that failure to appoint counsel other than originally appointed counsel to argue defendant's *pro se* motion for a new trial based upon ineffective as-

sistance of counsel was error and remanded the case for a new hearing on the ineffective-assistance-of-counsel issue. The original appointed counsel in *Krankel* apparently had failed to raise and investigate an alibi defense which defendant suggested. Krankel provided the names of his alibi witnesses, none of whom were interviewed by the public defender. Our supreme court remanded for a new post-trial hearing on the ineffective-counsel issue with instructions to provide new defense counsel at that hearing.

*Krankel* was filed by our supreme court shortly before the opinion *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052, which led to our supreme court's restatement of the standard for review of claims of ineffective assistance of counsel in *People v. Albanese* (1984), 104 Ill. 2d 504, 473 N.E.2d 1246. In *Strickland* the United States Supreme Court stated in part:

> "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. *** If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." (*Strickland v. Washington* (1984), 466 U.S. 668, 697, 80 L. Ed. 2d 674, 699, 104 S. Ct. 2052, 2069-70.)

Our supreme court quoted the above passage from *Strickland* in *Albanese*. (*People v. Albanese* (1984), 104 Ill. 2d 504, 527, 473 N.E.2d 1246, 1256.) With this background our appellate court decided *People v. Smith* (1985), 132 Ill. App. 3d 857, 477 N.E.2d 755. In *Smith* the defendant argued his counsel interviewed him for only 10 to 12 minutes and used faulty strategy at trial and thus did not provide effective assistance of counsel, and that the trial court erroneously allowed the public defender to argue his ineffective-assistance-of-counsel claim. The appellate court distinguished *Krankel*, observing (based on *Strickland* and *Albanese*) it appeared unlikely a longer conference between client and counsel would have changed the result and that defendant pointed to nothing specific that counsel neglected to do "which would have had any bearing on the result of this proceeding." *People v. Smith* (1985), 132 Ill. App. 3d 857, 861, 447 N.E.2d 755, 758.

Applying *Strickland* and *Albanese* to the instant record, we conclude beyond reasonable doubt that defendant was not denied effective assistance of counsel before the trial court and a new post-trial motion with new counsel is not required.

Although the defendant here points to two specific allegations of

incompetence, they would not have had any bearing on the result of his trial. Defendant does not specify how the cross-examination of Dr. Clyne was inhibited. The trial court specifically found the cross-examination of Clyne was not inhibited. Based on the record on appeal, that finding was correct. Dr. Peart was cross-examined as to the effect a combination of drugs might have on a person. Although Dr. Peart was not cross-examined in so many words on the effect of valium and ludiomal on defendant as it applied to an insanity defense, Dr. Clyne did testify those drugs did not cause defendant to become insane. Further, defendant did not testify he took any drugs near the time of the offense or that he ever took more than the prescribed amount except after he had been arrested and confined in the county jail. No other witness testified regarding the amount or type of drug defendant took near the time of the offenses. Defendant does not specify what questions should have been asked Dr. Peart based on the record. This court finds this issue to be without merit.

 █ Defendant next contends that the extended-term sentence of 40 years' imprisonment was an abuse of discretion because the court failed to consider certain mitigating factors. Attempted murder is punishable by a determinate sentence of not less than 6 years' nor more than 30 years' imprisonment (Ill. Rev. Stat. 1985, ch. 38, pars. 8—4(c)(1), 1005—8—1(a)(3)); however, if certain factors, as set forth in section 5—5—3.2(b) of the Unified Code of Corrections (Ill. Rev. Stat. 1985, ch. 38, par. 1005—5—3.2(b)), are found to be present, the court may impose an extended determinate penal sentence of not less than 30 years nor more than 60 years (Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—2(a)(2)). The trial court found that the attempted murder was one of the "most exceptionally brutal and heinous behaviors I can find"; therefore, the court was permitted to impose an extended-term sentence (Ill. Rev. Stat. 1985, ch. 38, par. 1005—5—3.2(b)(2).) Defendant argues, however, that the court's decision to impose an extended term was erroneous because the court allegedly ignored or rejected the following mitigating factors: that substantial grounds existed tending to excuse or justify defendant's criminal conduct; that defendant led a law-abiding life for a substantial period of time prior to the offense; and that the offenses were unlikely to recur. (Ill. Rev. Stat. 1985, ch. 38, pars. 1005—5—3.1(a)(4), (a)(7), (a)(8), (a)(9).) Defendant argues that economic stress, marital failures, and family misfortunes tend to justify his criminal conduct. Like the trial court, this court cannot find the foregoing justification for the brutality of the attempted murder. We note that the court imposed a sentence of seven years' imprisonment, one over the minimum penal sentence for armed

470

robbery (Ill. Rev. Stat. 1985, ch. 38, pars. 18—2, 1005—8—1(a)(3)); therefore, the factor of economic stress was taken into consideration for the economic crime. Defendant points out that his only prior felony conviction was in 1975 for forgery; therefore, he argues that he had led a law-abiding life for a substantial period prior to the commission of the attempted murder. The court stated that defendant's prior crime resembled certain factors of this case but defendant went further and pointed a gun at a person. Therefore, the court did consider this factor. Defendant failed to ask the court what weight was assigned this factor and having so failed, the issue is waived for purposes of appeal. (See *People v. Davis* (1982), 93 Ill. 2d 155, 162-63, 442 N.E.2d 855, 858.) At trial defendant presented witnesses who testified to his good character; therefore, he argues that the court erred in not finding that the offenses were unlikely to recur. The court stated that the crimes were a reaction to certain factors and that it could not predict defendant's future reaction if those factors recurred. This court cannot take exception to the trial court's finding. Although defendant argues that the sentence for attempted murder was excessive, this court finds that, based on the nature and circumstances of the offense as described previously in this order, the sentence for attempted murder is not an abuse of discretion and may even be considered lenient. Defendant's sentences are affirmed. See *People v. Perruquet* (1977), 68 Ill. 2d 149, 154, 368 N.E.2d 882, 884.

■ Defendant's third contention of error is that he should have been granted credit for 132 days' imprisonment as opposed to the 131 days' credit which the court accorded him. The State concedes that defendant is entitled to 132 days' credit. The record indicates that defendant was arrested on January 18, 1985, and sentenced on May 29, 1985, a total of 132 days. Defendant is entitled to credit for each day or part of a day held in confinement. *(People v. Johns* (1984), 130 Ill. App. 3d 548, 549, 474 N.E.2d 739, 740.) Therefore, this cause is remanded to the circuit court of Jefferson County for the issuance of an amended mittimus in conformity with this order.

Defendant lastly contends that he should be given credit against the court-ordered fine of $25 which is payable to the Crime Victims Assistance Fund, as he served more than five days' imprisonment due to his inability to post bond. I agree with that contention and would modify his sentence to reflect a credit of $25 against the $25 fine for the reasons I expressed in *People v. Johnson* (1986), 146 Ill. App. 3d 640, 652-53. However, less than a majority of this court concurs on this point, so the decision of the trial court denying credit is affirmed.

For the foregoing reasons, the judgment of the circuit court of Jefferson County is affirmed.

Affirmed.

JUSTICE JONES, concurring in part and dissenting in part:
I concur with Justice Welch's opinion upon all issues except the last, wherein he would grant defendant credit against the fine of $25 payable to the Violent Crime Victims Assistance Fund for time of incarceration prior to trial. Upon the basis of the opinion in *People v. Williams* (1986), 142 Ill. App. 3d 266, 491 N.E.2d 941, I would disallow such credit.

JUSTICE HARRISON dissenting:
I respectfully dissent.
I believe that once the issue of ineffective assistance of counsel is raised in the post-trial motion, the defendant is entitled to a lawyer who can argue the issue without a conflict at the post-trial motion hearing. Therefore, I would follow the rule set forth in *People v. Krankel* (1984), 102 Ill. 2d 181, 464 N.E.2d 1045, and remand for a new hearing on the defendant's post-trial motion with counsel other than his original counsel.