# Illinois Official Reports

## Appellate Court

---

### *People v. Coe*, 2018 IL App (4th) 170359

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ANDREW COE, Defendant-Appellant. |
| District & No. | Fourth District<br>Docket No. 4-17-0359 |
| Filed | December 6, 2018 |
| Decision Under Review | Appeal from the Circuit Court of McLean County, No. 06-CF-219; the Hon. Robert L. Freitag, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | James E. Chadd, Patricia Mysza, and Darrel F. Oman, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Jason Chambers, State's Attorney, of Bloomington (Patrick Delfino, David J. Robinson, and James Ryan Williams, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE CAVANAGH delivered the judgment of the court, with opinion.<br>Justices Steigmann and Knecht concurred in the judgment and opinion. |

**OPINION**

¶ 1     Defendant, Andrew Coe, petitioned for postconviction relief. While his case awaited an evidentiary hearing, he completed his sentence, and consequently, the McLean County circuit court dismissed his petition as moot. Defendant appeals. In our *de novo* review (see *Benz v. Department of Children & Family Services*, 2015 IL App (1st) 130414, ¶ 31), we conclude that, despite his release from custody, defendant still has a personal stake in the outcome of this postconviction proceeding, a stake sufficient to prevent his case from being moot (see *In re Marriage of Peters-Farrell*, 216 Ill. 2d 287, 291 (2005)). Therefore, we reverse the judgment, and we remand this case for further proceedings.

¶ 2                                          I. BACKGROUND

¶ 3     Defendant filed his petition in January 2009. At that time, he was serving a sentence of 12 years' imprisonment for unlawfully delivering a controlled substance within 1000 feet of a school (720 ILCS 570/407(b)(1) (West 2006)). He sought postconviction relief from that judgment for several reasons, including his trial counsel's alleged failure to call alibi witnesses in the jury trial.

¶ 4     After appointing postconviction counsel and hearing testimony, the trial court denied the petition. Defendant appealed.

¶ 5     For two reasons, we reversed the judgment and remanded the case for a new evidentiary hearing (*People v. Coe*, 2013 IL App (4th) 110459-U, ¶ 88): (1) the court erroneously believed it lacked discretion to replace the postconviction counsel with new counsel, as defendant had requested (*id.* ¶ 1), and (2) in deciding to deny the petition for postconviction relief, the court considered extrajudicial information, namely, the postconviction counsel's performance in other cases (*id.*).

¶ 6     On remand, defendant filed motions for continuances as he attempted to obtain private counsel, and the trial court granted the motions. On June 25, 2014, the court granted defendant's sixth motion for a continuance, rescheduling the postconviction proceeding until September 2, 2014.

¶ 7     On September 2, 2014, defendant failed to appear, and the State moved to dismiss the postconviction petition for want of prosecution. The trial court granted the motion.

¶ 8     On October 6, 2014, defendant filed a motion that the trial court (1) deny the State's motion for dismissal for want of prosecution (although, actually, the court already had granted it) and (2) appoint postconviction counsel. The proof of service stated that defendant had placed his motion "in the institutional mail of Stateville Correctional Center" on September 30, 2014.

¶ 9     On November 28, 2016, the trial court held a hearing "on the defendant's motion to *** reinstate the first amended petition for post-conviction relief," as the court construed the motion. Defendant now was represented by appointed postconviction counsel, who argued that defendant's motion to reinstate his petition was timely under the mailbox rule.

¶ 10    The prosecutor disagreed but argued that, in any event, the postconviction petition was moot because defendant had served his prison sentence and his mandatory supervised release had expired.

¶ 11 The trial court responded that the present hearing was merely for the purpose of deciding whether defendant's motion for reinstatement was timely. (Also, defense counsel said he needed time to research the question of mootness.) The court decided that the motion was timely under the mailbox rule because defendant had placed the motion in the institutional mail on September 30, 2014, within 30 days after the dismissal. So, the court scheduled defendant's motion for reinstatement to be heard on January 13, 2015.

¶ 12 That hearing was rescheduled to May 2, 2017, and in that hearing, the State filed a motion to dismiss the postconviction petition as moot. The prosecutor told the trial court he had given a copy of the motion to defense counsel the day before. The motion argued that because defendant had completely served his sentence, including the term of mandatory supervised release, he now lacked standing under section 122-1(a) of the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1(a) (West 2016) ("Any person *imprisoned in the penitentiary* may institute a proceeding under this Article ***." (Emphasis added.)).

¶ 13 Before taking up the issue of mootness, the trial court heard testimony from defendant regarding his motion to reinstate his postconviction petition. He explained that on September 26, 2014, he was scheduled to appear in another matter and that he mistakenly believed that his postconviction petition was to be heard on that date instead of on September 2, 2014. In other words, he confused the court dates. After hearing defendant's explanation, the court found that defendant was negligent in missing the hearing of September 2, 2014. Because defendant, however, had filed a motion for reinstatement within 30 days after the dismissal and because the petition had enough potential merit to be in the third stage of the postconviction proceeding, the court decided to grant defendant's motion to reinstate his postconviction petition.

¶ 14 The trial court then heard arguments on the State's motion to dismiss the (reinstated) petition on lack of standing. The court took judicial notice that defendant was discharged from mandatory supervised release on September 4, 2015, as stated in a notification from the Illinois Department of Corrections (Department). Because defendant no longer was suffering any deprivation of liberty as a result of his conviction of unlawful delivery of a controlled substance within 1000 feet of a school, the court concluded, on the authority of *People v. Henderson*, 2011 IL App (1st) 090923, that his petition for postconviction relief had become moot. The court acknowledged the arguably contrary authority of *People v. Davis*, 39 Ill. 2d 325 (1968), but because that case was "old" and because it established "less than a bright-line rule," the court chose to follow *Henderson*. Accordingly, the court granted the State's motion to dismiss the petition for postconviction relief.

¶ 15 This appeal followed.

## II. ANALYSIS

¶ 16

¶ 17 We decide *de novo* whether defendant's discharge from the Department's custody renders moot a petition for postconviction relief that he filed while still in custody. See *Benz*, 2015 IL App (1st) 130414, ¶ 31 ("Whether a claim is moot is an issue we review *de novo* on appeal."). We will begin by discussing the case law that addresses that issue.

¶ 18                                        A. The Case Law
¶ 19                               1. Davis, *as Interpreted by* Carrera
¶ 20        In *Davis*, the defendant filed a petition for postconviction relief, and apparently he was in
prison at the time of the filing. *Davis*, 39 Ill. 2d at 327. The trial court appointed counsel to
represent him, but by the time the case was heard, almost two years later, the defendant no
longer was in prison. *Id.* (The delay between the filing of the petition and the convening of the
hearing was not the defendant's fault. *Id.*) Nevertheless, the court went ahead and heard
testimony (*id.* at 327-28), after which the court denied postconviction relief (*id.* at 326).

¶ 21        The supreme court granted the defendant leave to appeal. *Id.* On appeal, the State argued
that, regardless of the evidentiary merits of the petition, it deserved to be dismissed "because
[the defendant] was not incarcerated at the time the cause was heard." *Id.* at 328. The State
relied on the wording of section 122-1 (*id.* at 328-29), which, like the present version of section
122-1(a) (725 ILCS 5/122-1(a) (West 2016)), made imprisonment a condition of "institut[ing]
a proceeding under this Article." Ill. Rev. Stat. 1965, ch. 38, § 122-1. The statute read: "Any
person imprisoned in the penitentiary who asserts that in the proceedings which resulted in his
conviction there was a substantial denial of his [constitutional] rights *** may institute a
proceeding under this Article." *Id.* The supreme court rejected the State's interpretation of
section 122-1 and gave the following explanation for doing so:

> "As there are obvious advantages in purging oneself of the stigma and disabilities
> which attend a criminal conviction, we see no reason to so narrowly construe this
> remedial statute as to preclude the remedy *in every case* in which the petition is not
> filed and the hearing completed before imprisonment ends." (Emphasis added.) *Davis*,
> 39 Ill. 2d at 329.

Because that sentence is rather vaguely hedged, we can understand why the trial court in the
present case would regard *Davis* as establishing "less than a bright-line rule." What does "not
in every case" mean? *Davis* does not explain in what cases the remedy would and would not be
precluded if imprisonment ended before the petition was filed or the hearing was held.

¶ 22        Later, however, in *People v. Carrera*, 239 Ill. 2d 241, 246 (2010), the supreme court
provided definitive clarification, interpreting *Davis* as follows: " 'imprisoned in the
penitentiary' has been held to include defendants who have been released from incarceration
after timely filing their petition (*People v. Davis*, 39 Ill. 2d 325 (1968))." Thus, according to
the supreme court, being imprisoned at the time one files the petition is enough to satisfy
section 122-1(a), and section 122-1(a) remains satisfied even if, during the pendency of the
postconviction proceeding, one is released from prison. See *id.* (citing *Davis*, 39 Ill. 2d 325).


¶ 23                                           2. Henderson
¶ 24        In *Henderson*, the defendant filed a postconviction petition while he was imprisoned
(*Henderson*, 2011 IL App (1st) 090923, ¶ 5); the trial court summarily dismissed the petition
(*id.*); he appealed (*id.* ¶ 1); and while his appeal was pending, he was discharged from
mandatory supervised release (*id.* ¶ 8). "Because [the] defendant's liberty [was] no longer
encumbered by his convictions," the First District felt obliged to "consider whether the parties'
contentions under the Act ha[d] been rendered moot." *Id.*

¶ 25        The First District concluded that the parties' contentions had indeed become moot and that
the defendant had "lost standing under the Act." *Id.* ¶ 15. The reason was that the defendant

"no longer need[ed] the Act's assistance to secure his liberty." *Id.* The First District cited *Carrera*, among other authorities, for the following proposition: "A remedy under the Act is only available to persons who are actually being deprived of their liberty, not persons who have completely served their sentences and merely wish to purge their criminal records of past convictions." *Id.* ¶ 10 (citing *Carrera*, 239 Ill. 2d at 257).

¶ 26    The trouble with relying on *Carrera* for that unqualified proposition is that *Carrera* says with apparent approval: " '[I]mprisoned in the penitentiary' has been held [in *Davis*] to include defendants who have been released from incarceration after timely filing their petition ***." *Carrera*, 239 Ill. 2d at 246. It is true that such defendants—those who filed their petition while incarcerated but who were released from custody while their petition was still awaiting final determination—no longer would be "persons who are actually being deprived of their liberty." *Henderson*, 2011 IL App (1st) 090923, ¶ 10. Even so, according to *Carrera*'s interpretation of *Davis*, such defendants nevertheless would satisfy the condition in section 122-1(a) of being "imprisoned in the penitentiary" and, thus, could continue pursuing relief under the Act. (Internal quotation marks omitted.) *Carrera*, 239 Ill. 2d at 246.

¶ 27    *Henderson* appears to overlook that authoritative interpretation in *Carrera* when *Henderson* says:

> "We find no meaningful distinction to be drawn between instances where the defendant's liberty is not encumbered when he files the petition and those instances in which a defendant regains his liberty after the petition is filed. The purpose of the Act would not be fulfilled by giving either defendant relief. He is no longer on that string and the State cannot affect his liberty at present.
>
> Here, [the] defendant has completed his *** term [of mandatory supervised release] and, thus, no longer needs the Act's assistance to secure his liberty. Accordingly, defendant has lost standing under the Act, a defect that cannot be cured. Even if we were to remand this cause for further proceedings, the trial court would be obligated to deny defendant relief at the second stage due to this defect. As a result, the parties' arguments under the Act have become moot." *Henderson*, 2011 IL App (1st) 090923, ¶¶ 14-15.

*Davis*, as interpreted by *Carrera*, would lead to a different conclusion.

¶ 28    Another problem with the quoted passage from *Henderson* is the conflation of statutory standing and the common-law prohibition against deciding moot issues—a misstep that we will discuss later in this opinion.

¶ 29                                           3. Jones

¶ 30    In *People v. Jones*, 2012 IL App (1st) 093180, ¶¶ 3-4, a different division of the First District disagreed with *Henderson* that a defendant lost standing and that the postconviction petition became moot if the Department released the defendant from custody while the postconviction proceeding was pending or was on appeal.

¶ 31    *Jones* gave three reasons for disagreeing with *Henderson*. First, before deciding that a postconviction petition had become moot, the appellate court should give the defendant an opportunity to be heard on that question. *Id.* ¶ 7. Second, postconviction petitions were frequently subject to "delays not found in other categories of cases before they receive[d] final review." *Id.* ¶ 8. Third, in *Davis* and *Carrera*, the supreme court "made clear that all that [was]

required [was] that a [defendant] *** still [had to] be serving any sentence imposed, including any period of mandatory supervised release, at the time of the initial timely filing of his petition." *Id.* ¶ 10.

¶ 32                                    4. McDonald

¶ 33    In *People v. McDonald*, 2018 IL App (3d) 150507, ¶ 5, the defendant complained, in his postconviction petition, that before he entered negotiated guilty pleas, no one informed him that, as a convicted sex offender who was indigent, he would have to serve his term of mandatory supervised release in prison. After hearing evidence, the trial court denied the petition. *Id.* ¶ 11. The defendant appealed. *Id.* ¶ 1.

¶ 34    The Third District noted that during the pendency of the appeal, the Department released the defendant from custody and his term of mandatory supervised release ended. *Id.* ¶ 14. Consequently, it was necessary to "consider whether defendant would have standing to continue to pursue his constitutional claims" if his case were remanded for a new evidentiary hearing, as he requested. *Id.* ¶¶ 14, 16. The Third District framed the issue as one of statutory construction: whether the phrase "imprisoned in the penitentiary" in section 122-1(a) (725 ILCS 5/122-1(a) (West 2014)) was "a limitation only upon the *filing* of a postconviction petition or a limitation upon the receipt of *relief* under the Act." (Emphases in original.) *McDonald*, 2018 IL App (3d) 150507, ¶ 18. In other words, did a defendant have to "be in custody at the time relief would be granted in order to be eligible for that relief"? *Id.* Reasonable arguments could be made on both sides of that question.

¶ 35    On the one hand, the supreme court repeatedly had used language "casting the custody requirement in terms of relief" (*id.* ¶ 20), even though the cases in which the supreme court had used such language were not factually on point: that is, they were not cases like *Davis*, in which the defendant filed a postconviction petition while in custody and was released from custody while the petition still was pending. But the relief under discussion in these cases was always the restoration of liberty. In *People v. Dale*, 406 Ill. 238, 246 (1950), for example, the supreme court stated that the legislature intended " 'to make the *remedy* available only to persons actually being deprived of their liberty and not to persons who had served their sentences and who might wish to purge their records of past convictions.' " (Emphasis in original.) *McDonald*, 2018 IL App (3d) 150507, ¶ 20 (quoting *Dale*, 406 Ill. at 246). Or to take another example, the supreme court stated in *People v. Martin-Trigona*, 111 Ill. 2d 295, 301 (1986): " '*Relief is available* under the Act all persons *whose liberty is constrained* by virtue of a criminal conviction ***.' " (Emphases in original.) *McDonald*, 2018 IL App (3d) 150507, ¶ 21 (quoting *Martin-Trigona*, 111 Ill. 2d at 301). Or for yet another example, the supreme court stated in *People v. Pack*, 224 Ill. 2d 144, 150 (2007): " 'A review of the history of the Act and our construction of the term "imprisoned" reveals that courts in this state have always held a defendant's liberty interest to be paramount when construing the Act.' " *McDonald*, 2018 IL App (3d) 150507, ¶ 21 (quoting *Pack*, 224 Ill. 2d at 150).

¶ 36    Given that liberty was the paramount interest in the Act, the Third District in *McDonald* had reservations whether forging ahead with the postconviction proceeding would be consistent with the legislative intent. After all, "should [the] defendant ultimately prevail on his petition and be allowed to withdraw his plea, the State would be free to retry him. Rather than secure his release from custody, [the] defendant may be utilizing the Act to return to custody." *Id.* ¶ 21 n.2. It seemed to the Third District that this legislative concern with liberty

was a weighty consideration against holding that the defendant had continued "standing" under the Act. See *id.* ¶ 21.

¶ 37    On the other hand, though, the Third District had to reckon with *Davis*, the lone binding precedent that was, in its facts and its framing of the issue, directly on point. The supreme court had "directly addressed the present issue *** on a single occasion," in *Davis*—a case that stood "in stark contrast to the cases listed above," *e.g.*, *Dale*, *Martin-Trigona*, and *Pack*. *Id.* ¶ 22. In *Davis*, the supreme court "found standing based upon the advantages of purging a conviction from one's record, seemingly in direct conflict with the language in *Dale*." *Id.*

¶ 38    Because *Davis* had "never been explicitly overruled and remain[ed] good law" and because "the rule of lenity dictate[d] that criminal statutes generally be construed in favor of a defendant," the Third District held: "[A] defendant who timely files his postconviction petition while in custody is eligible for relief under the Act, regardless of whether he is released from custody in the intervening time." *Id.* ¶ 23.

¶ 39                    B. The Difference Between Statutory Standing
                          and the Doctrine of Moot Issues

¶ 40    It is crucial to draw a distinction between (1) standing and (2) mootness. We respectfully suggest that *Henderson* makes a mistake by conflating those two concepts. See *Henderson*, 2011 IL App (1st) 090923, ¶ 15 (because the defendant has served his term of mandatory supervised release, he "has lost standing under the Act," and "the parties' arguments under the Act have become moot").

¶ 41                                  1. *Standing*

¶ 42    In a civil case, when the defendant pleads the affirmative defense that the plaintiff lacks standing (see *Lebron v. Gottlieb Memorial Hospital*, 237 Ill. 2d 217, 252 (2010)), *i.e.*, an injury in fact to a legally recognized interest (*In re Estate of Burgeson*, 125 Ill. 2d 477, 486 (1988)), the relevant question is whether the plaintiff had standing *as of the time when the plaintiff filed suit* (*U.S. Bank Trust National Ass'n v. Lopez*, 2018 IL App (2d) 160967, ¶ 18; *23-25 Building Partnership v. Testa Produce, Inc.*, 381 Ill. App. 3d 751, 755 (2008)). (Although this postconviction proceeding is like a civil case (see *People v. Bailey*, 2017 IL 121450, ¶ 29), the titles of the parties are switched around because, in the underlying criminal case, defendant was the defendant and the State was the plaintiff. In this postconviction proceeding, defendant actually is analogous to the plaintiff in a civil case since he is the one who filed the action, and the State is analogous to the defendant.) Thus, to hold, as the First District held in *Henderson*, 2011 IL App (1st) 090923, ¶¶ 15, 18, that the defendant "has lost standing" would be a contradiction in terms because standing, by definition, is standing to bring the suit, not to maintain the suit. See *Bank Trust National*, 2018 IL App (2d) 160967, ¶ 18; *23-25 Building Partnership*, 381 Ill. App. 3d at 755. The doctrine of standing cares only about the date when the plaintiff filed the action, not the day after. See *Unifund CCR Partners v. Shah*, 407 Ill. App. 3d 737, 740 (2011) ("Standing is the requirement that a lawsuit cannot *commence* unless a plaintiff has some injury in fact to a legally recognized interest." (Emphasis added and internal quotation marks omitted.)).

¶ 43    There is common-law standing, which requires an injury in fact to a legally recognized interest (*Burgeson*, 125 Ill. 2d at 486), and there is statutory standing, which requires the fulfillment of statutory conditions in order to sue for legislatively created relief (see *Wilson v.*

- 7 -

*Tromly*, 404 Ill. 307, 310 (1949)). The "legislature, having conferred a right of action *** may determine who shall sue, and the conditions under which the suit may be brought." *Id.* In the Act (725 ILCS 5/122-1 *et seq.* (West 2016)), the legislature created a right of action for postconviction relief. In section 122-1(a) of the Act, the legislature prescribed a condition for petitioning for such relief: "[a]ny person imprisoned in the penitentiary may institute a proceeding under this Article." *Id.* § 122-1(a). Because section 122-1(a) is concerned only with *standing* to bring suit, it stipulates that current imprisonment is a condition for "*institut[ing]*" a postconviction proceeding, not for continuing to litigate it. (Emphasis added.) *Id.* "[C]ourts should not, under the guise of statutory construction, add requirements or impose limitations that are inconsistent with the plain meaning of the enactment." *Nottage v. Jeka*, 172 Ill. 2d 386, 392 (1996). We will not, in the guise of statutory construction, effectively amend section 122-1(a) by adding to it a requirement of continued imprisonment as a condition of maintaining, as opposed to instituting, a postconviction proceeding. See *id.* Section 122-1(a) states, in plain, unambiguous English, that imprisonment is a condition only for "institut[ing]" a postconviction proceeding, not for maintaining it, and any change to that section should be made by the legislature, not by us. 725 ILCS 5/122-1(a) (West 2016).

¶ 44 The legislature has, in fact, repeatedly amended section 122-1(a) since 1968, when the supreme court decided *Davis*. Indeed, the legislature also has amended section 122-1(a) since 2010, when, in *Carrera*, the supreme court made clear what *Davis* stood for. See *Carrera*, 239 Ill. 2d at 246 (" 'imprisoned in the penitentiary' has been held to include defendants who have been released from incarceration after timely filing their petition" (citing *Davis*, 39 Ill. 2d 325)). Yet in none of those numerous amendments did the legislature ever see fit to supersede *Davis* and *Carrera*. "We assume not only that the General Assembly acts with full knowledge of previous judicial decisions but also that its silence on an issue in the face of those decisions indicates its acquiescence to them." *People v. Way*, 2017 IL 120023, ¶ 27.

¶ 45 Therefore, we interpret section 122-1(a), in accordance with its plain terms (*Moon v. Rhode*, 2016 IL 119572, ¶ 22), as meaning merely that when "*institut[ing]* a [postconviction] proceeding," the defendant must be "imprisoned in the penitentiary" (emphasis added) (725 ILCS 5/122-1(a) (West 2016)). (The supreme court has interpreted imprisonment as including any form of custody, including mandatory supervised release (*Carrera*, 239 Ill. 2d at 246).) Section 122-1(a) has nothing to say about release from imprisonment after the institution of the postconviction proceeding, and we decline to judicially amend section 122-1(a) so as to address that change of circumstance. See *Moon*, 2016 IL 119572, ¶ 22 ("Where statutory provisions are clear and unambiguous, the plain language as written must be given effect without reading into it exceptions, limitations, or conditions that the legislature did not express.").

¶ 46 *2. An Intervening Event That Makes an Issue Moot*

¶ 47 The legislature can prescribe conditions for instituting a proceeding for statutory relief, and anyone who meets those conditions has statutory standing to bring suit. *Wilson*, 404 Ill. at 310. Even though the plaintiff had standing to bring the suit in the first place, a question that the plaintiff raises in the suit can become moot if events subsequent to the institution of the suit make it impossible for the court to grant effectual relief to the plaintiff. *Wheatley v. Board of Education of Township High School District 205*, 99 Ill. 2d 481, 484-85 (1984). To put it differently, "[a] moot question is one that existed but because of the happening of certain

events has ceased to exist and no longer presents an actual controversy over the interest or rights of the party; an abstract question is one in existence but for which no effectual relief can be granted." (Internal quotation marks omitted.) *Ahmad v. Board of Election Commissioners*, 2016 IL App (1st) 162811, ¶ 9.

¶ 48 Thus, standing scrutinizes the status of the plaintiff at the time the plaintiff files suit, whereas mootness scrutinizes the genuineness of an issue after the filing of the suit. Section 122-1(a) addresses the petitioner's standing at the time the petitioner institutes the postconviction proceeding; it has nothing to say about events occurring after the institution of the proceeding. If we want to determine whether an issue in the postconviction proceeding has become moot, the answer is not to be found in section 122-1(a); that section concerns only standing to bring suit. Instead, we have to turn to the common-law doctrine of moot issues.

¶ 49 It is a mistake to blur together statutory standing and common-law mootness. As a commentator explains:

"Mootness cases involving secondary or 'collateral' injuries provide another example of the difference between standing and mootness analysis. *When a plaintiff alleges some present injury in addition to the 'past' harm sustaining standing*, *the secondary injury may overcome mootness even if it would not have sufficed independently to support standing*. In lawsuits challenging criminal convictions after the challenger's sentence had been served, the evident injury supporting federal standing, the Court has 'acknowledged the obvious fact of life that most criminal convictions do in fact entail adverse *** consequences. The mere "possibility" that this will be the case is enough to preserve a criminal case from ending "ignominiously in the limbo of mootness." ' " (Emphasis added.) Richard H. Fallon, Jr., *Of Justiciability, Remedies, and Public Law Litigation: Notes on the Jurisprudence of* Lyons, 59 N.Y.U. L. Rev. 1, 27-28 (1984) (quoting *Sibron v. New York*, 392 U.S. 40, 55 (1968), quoting *Parker v. Ellis*, 362 U.S. 574, 577 (1960) (Warren, C.J., dissenting)).

¶ 50 Defendant's interest "in purging [himself] of the stigma and disabilities which attend a criminal conviction" would not have given him *standing* under section 121-1(a), but after his release from custody, that interest prevents his case from being *moot*. *Davis*, 39 Ill. 2d at 329. The reason is that one of the forms of relief a court may grant in a postconviction proceeding is a retrial. 725 ILCS 5/122-6 (West 2016). Despite his release from custody, a retrial still would have value for defendant because it would be a way of potentially purging his criminal conviction. In that regard, he still has "a sufficient personal stake in the outcome to assure the adversarial relationship that sharpens the presentation of issues upon which the court so largely depends for illumination of difficult *** questions." (Internal quotation marks omitted.) *Peters-Farrell*, 216 Ill. 2d at 291. Therefore, we agree with *Jones* and *McDonald* and disagree with *Henderson*.

¶ 51 C. The Reinstatement of the Petition After Its Dismissal
for Lack of Prosecution

¶ 52 Quoting *People v. Pace*, 386 Ill. App. 3d 1056, 1060-61 (2008) (quoting 725 ILCS 5/122-5 (West 2006)), the State argues that "asking the court to reinstate the action 'is the same as asking the court to allow "pleading over." ' " The State seems to understand the term "pleading over" as meaning, in the context of this case, filing a new petition in a new postconviction proceeding. But see Black's Law Dictionary (10th ed. 2014) (defining "plead over" as "[t]o

fail to notice a defective allegation in an opponent's pleading before responding to the pleading"). The State concludes that "if a court allows reinstatement, a new action commences." In further support of that conclusion, the State cites *People v. English*, 381 Ill. App. 3d 906, 910 (2008), which observed that, under section 13-217 of the Code of Civil Procedure (735 ILCS 5/13-217 (West 1994)), the plaintiff " 'may *commence a new action within one year*' " after a voluntary dismissal—a right the plaintiff likewise would use after a dismissal for want of prosecution. (Emphasis added.) Thus, by the State's reasoning, the reinstatement of defendant's postconviction proceeding commenced a new postconviction proceeding, and under section 122-1(a) (725 ILCS 5/122-1(a) (West 2016)), he lacked standing because he was no longer in the Department's custody when the new proceeding commenced.

¶ 53 One problem with the State's reasoning is that defendant never commenced a new action under section 13-217. Instead, he obtained a reinstatement of his postconviction petition. See *Progressive Universal Insurance Co. v. Hallman*, 331 Ill. App. 3d 64, 67 (2002) ("Although [the] plaintiff simply could have refiled its complaint, moving to vacate the [dismissal without prejudice] was a viable option."). He never filed a new postconviction petition; he obtained a reinstatement of his petition—which is another way of saying he obtained a vacatur of the dismissal for want of prosecution. As long as the statutory one-year period for refiling (see 735 ILCS 5/13-217 (West 2016)) was unexpired, the dismissal for want of prosecution was a nonfinal order, and the trial court had jurisdiction to vacate it. See *Jackson v. Hooker*, 397 Ill. App. 3d 614, 618 (2010); *Hallman*, 331 Ill. App. 3d at 68.

¶ 54 Granted, we said in *Pace*: "Asking the court to reinstate a voluntarily dismissed or withdrawn petition is the same as asking the court to allow 'pleading over' or to permit the 'filing [of] further pleadings.' " *Pace*, 386 Ill. App. 3d at 1060-61 (quoting 725 ILCS 5/122-5 (West 2006)). Actually, asking the trial court to reinstate a petition that the court dismissed for want of prosecution is the same as asking the court to vacate the dismissal for want of prosecution. See *Wilson v. Evanston Hospital*, 276 Ill. App. 3d 885, 886 (1995); *Storcz v. O'Donnell*, 256 Ill. App. 3d 1064, 1068 (1993). "It is well-settled that *vacatur* of an order in due time leaves the pleadings the same as if the order had never been entered." *Zanzig v. H.P.M. Corp.*, 134 Ill. App. 3d 617, 625 (1985); see also *Doe v. Doe*, 282 Ill. App. 3d 1078, 1082 (1996) ("When an order is set aside, it leaves pleadings as if no order had ever been entered."). A return to the *status quo ante* meant that there was no new postconviction proceeding and, hence, no need to reestablish standing.

¶ 55 In sum, defendant had standing under section 122-1(a) because he was in prison when he filed his petition for postconviction relief. Any date subsequent to the filing of his petition is irrelevant to his standing. His release from custody during the pendency of his petition did not make his petition moot. See *Carrera*, 239 Ill. 2d at 246; *Davis*, 39 Ill. 2d at 329.

¶ 56                                                III. CONCLUSION

¶ 57 For the foregoing reasons, we reverse the trial court's judgment, and we remand this case for further proceedings consistent with this opinion.

¶ 58 Reversed and remanded.